COMMONWEALTH *vs.* EDWARD G. BOYER.

Bristol.    March 4, 1969. — May 1, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Homicide.*

Evidence in a murder case that after conversing with the victim in a street the defendant got into his automobile and started to leave but suddenly stopped, got out of the automobile and took from it a shotgun which he had previously loaded and left with its bolt open, that he walked toward the victim with the gun on his hip and closed the bolt, thereby feeding a cartridge into the chamber, and that he moved the gun off his hip and it discharged and killed the victim warranted a finding that the defendant shot him intentionally and with malice aforethought, rather than accidentally, and warranted a verdict of guilty of murder in the second degree; justice did not require disturbing the judgment under the authority of G. L. c. 278, § 33E, as amended through St. 1962, c. 453.

INDICTMENT found and returned in the Superior Court on November 7, 1967.

The case was tried before *Beaudreau,* J.

*Daniel A. Sullivan* for the defendant.

*L. Barry Tinkoff,* Assistant District Attorney, for the Commonwealth, submitted a brief.

SPALDING, J.    The defendant was indicted for the murder of one Francis Sampson and was found guilty of murder in the second degree.    The case, having been tried subject to G. L. c. 278, §§ 33A–33G, comes here on the defendant's appeal.

The defendant assigns as error the denial of his motions for directed verdicts with respect to murder in the second degree and manslaughter, and the denial of his motion for a new trial.    He also argues that the evidence calls for the entry of a verdict of a lesser degree of guilt.    See *Commonwealth* v. *Baker,* 346 Mass. 107.    G. L. c. 278, § 33E, as amended through St. 1962, c. 453.

A summary of the pertinent evidence is as follows:   On Saturday, June 10, 1967, the defendant arose about noon. Shortly thereafter he removed his 12-gauge shotgun from his closet, inserted a clip containing three live rounds of ammunition, and opened the bolt of the gun.   He wrapped the gun in a blanket and placed it and a box of ammunition between the bucket seats of his automobile.   With the shotgun in his car he drove to a bar and had four or five beers. About five o'clock he left the bar to have something to eat. He returned to the bar and had three more beers. He then left the bar again and went to an amusement park where he had another beer.   After he left the amusement park, around midnight, he by chance met two of his friends, one Olsen and one Picard.   Olsen and Picard also had been drinking that evening.   The defendant invited them "to go for a ride," and they drove to a "hot dog" stand.   Later, upon discovering that they were without funds and cigarettes, they went to the home of one Ragonesi to get some cigarettes.

About 2 A.M., while they were on Ragonesi's porch knocking on the door, Ragonesi, one Thomas, and Sampson approached.   They had been at a "get-together" at Sampson's home and had been drinking.   Ragonesi called out to the three on the porch and the six met in the middle of the street. During a general conversation which followed, Sampson, punching one hand against the palm of his other hand, walked around in front of the defendant.   Sampson asked the defendant if his father was the "skinny carpenter" who worked at the Providence Pile Company.   When the defendant later asked Sampson for a cigarette, Sampson gave him one and offered him a light.   Sampson's hand was shaking and the defendant put his hand on Sampson's hand to steady it.   Sampson told him to "Cool it," and "Don't get cocky."   Olsen then suggested to the defendant that they "get out of here."

The defendant, Olsen, and Picard got into the defendant's automobile and started to leave.   As the car passed the other three men the defendant thought he heard someone say "your father."   He suddenly stopped the automobile and

got out with the shotgun. As he walked along the side of the car toward the men he asked, "What's that you said?" and bolted the gun. The gun was at that time on his hip. Sampson did not move, but said, "What're you going to do with that gun?" The defendant moved the gun off his hip and it discharged. Sampson turned, yelled "Get him," and fell. Sampson died as a result of a shotgun wound of the chest. The defendant ran back to the car and drove off at a rapid speed. The defendant, Olsen, and Picard were later apprehended in Rhode Island and the gun was recovered from bushes in which it had been thrown.

The defendant contends that the evidence requires the conclusion that the shooting was accidental. Whether the discharge of the shotgun was intentional or accidental was a question of fact for the jury. Five eyewitnesses to the shooting, including the defendant, testified with regard to the defendant's movements immediately prior to the shooting. Some of this evidence was accompanied by demonstrations as to where the shotgun was in relation to the defendant's body and how he had moved the gun immediately before it discharged. Since these demonstrations were not verbally described for the record, they do not reveal precisely where the shotgun was at the time it discharged. But Thomas, a witness to the shooting, described the position of the gun immediately prior to its discharge as "[j]ust below the shoulder." The testimony of the defendant that he approached Sampson with the gun for the purpose of scaring him and that it discharged when he "put on the safety" could be weighed against the uncontradicted evidence that the defendant, after removing the gun from his car, closed the bolt and fed a cartridge into the chamber. Until this was done the gun could not have been fired.

The case was properly submitted to the jury. The judge fully instructed the jury as to the elements of murder in the first and second degree, and of manslaughter. It was open to the jury to find on the evidence that the defendant shot Sampson intentionally and with malice aforethought. In accordance with our duty under G. L. c. 278, § 33E, as

amended through St. 1962, c. 453, we have reviewed the entire evidence and are of opinion that justice does not require us either to order a new trial or to direct the entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*