COMMONWEALTH *vs.* RICHARD CLARK, JR.
(and two companion cases[1]).

Suffolk.    March 6, 1973. — April 13, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Evidence,* Missing witness, Testimony at former trial, Label. *Homicide. Practice, Criminal,* Unsworn statement by defendant, Criminal records of witness. *Joint Enterprise.*

Where the only surviving witness to a shooting, apart from the defendants, was missing at the time of the trial of indictments for murder, and there was evidence that the Commonwealth had conducted a diligent search for him, there was no error in the admission of a transcript of testimony by the missing witness at a previous trial of the same indictments, at which each defendant had had a full opportunity to cross-examine him. [470–471]

At the trial of indictments for murder, testimony by a witness that a gun given to him by one of the defendants had a label on its handle indicating the caliber of the gun was competent. [471]

At the trial of indictments for murder, evidence that one of the defendants had held a gun on the victim while both were sitting in a car, that that defendant after leaving the car stood near it and pointed the gun in the direction of the victim, who was sitting in the car with a window open, that the victim was then shot, and that the trajectory of the bullet was downward through the victim's body,

---

[1] The companion cases are both against Maurice Williams.

did not require a charge to the jury on involuntary manslaughter.  [471]

At the trial of indictments for murder, there was no error in refusing to allow the defendants, who did not testify during the trial, to make unsworn statements to the jury.  [472]

Evidence that a defendant in a murder trial had held a gun on the victim while both were sitting in a car, that after leaving the car the defendant stood near it pointing a gun in the direction of the victim, and that shortly thereafter the victim was struck by a bullet which came from the area where the defendant stood, warranted a verdict that the defendant was guilty of murder in the second degree.  [472]

Evidence in a murder case merely that the defendant participated with another person in an effort to sell heroin to other occupants of an automobile in which the defendant and his partner were riding, that upon failure to make the sale the partner, who had displayed a gun while in the automobile, got out of it on one side and stood pointing the gun in the direction of one of the other occupants, that the defendant left the automobile on the opposite side, and that thereupon such other occupant was fatally wounded by a shot fired by the defendant's partner, did not warrant a finding that the defendant was guilty of murder.  [472–473]

At the trial of indictments for murder, there was no error in the denial of a motion by the defendant to direct the Commonwealth to provide him with criminal and probation records of its witnesses, where affirmative action by the prosecution would have been required to obtain the records.  [473–474]

INDICTMENTS found and returned in the Superior Court on August 7, 1970.

The cases were tried before *Roy*, J.

*Robert A. Stanziani* for Maurice Williams.

*P. J. Piscitelli* (*Richard M. Egbert* with him) for Richard Clark, Jr.

*Newman A. Flanagan*, Assistant District Attorney, for the Commonwealth.

REARDON, J.  The defendants were found guilty of murder in the second degree of one Leonard Vincent Castronova, and additionally the defendant Maurice Williams was found guilty of unlawfully carrying a firearm.  Both defendants received life sentences, and Williams received a concurrent sentence for a term of years on the gun charge.  The case taken under G. L. c. 278, §§ 33A–33G, is before us with the transcript of evidence, exhibits, and the defendants' assignments of error.

The evidence tended to show the following. On May 21, 1970, Castronova and one Mark Silverio drove to the Grove Hall section of Boston for the purpose of purchasing heroin. Silverio was driving a 1964 Dodge automobile which was owned by his aunt. Silverio had in his possession $5, although he knew that the selling price for a bag of heroin was at least $10. Castronova was carrying a loaded pistol, and a knife had been concealed by Silverio underneath the front seat cushion of the car. Arriving in the vicinity of Jules Pool Room they sought a seller of heroin and were then hailed by the defendant Clark who asked them, "Are you looking?" Upon receiving an indication from Silverio that they were, Clark entered the automobile and gave the driver Silverio directions down Blue Hill Avenue and on to Devon Street. Silverio drove to the area indicated and stopped his car. Clark alighted from the car, disappeared around a corner, and in about two minutes was back with Williams who got in the back seat behind Castronova. Clark meanwhile got into the back seat behind Silverio. Williams handed Silverio a bag and said, "Here's the stuff." Silverio handed the bag to Castronova who tasted the substance in the bag and returned the bag to Silverio who also tasted it. Silverio then gave the bag back to Williams saying, "We don't want it. It's not heroin." Williams said, "You made me open this and you are going to buy it," and at that point produced a gun. Both Silverio and Castronova told Williams they had no money with which to buy the heroin, at which point Williams said, "Okay, let me out of this . . . car." Thereafter Williams alighted from the passenger's side of the car which had two doors only, and Clark from the driver's side. While standing within several feet of the car outside Castronova's open window with a gun in his hand Williams said, "[G]et the hell out of here." As Silverio put his foot to the accelerator and the car began to go forward he heard a gun discharge, and Castronova said that he had been shot. Silverio drove Castronova to the Carney

Hospital where a discussion took place in the parking space as to what each should tell the doctor and the police. Silverio and Castronova had arrived at the hospital between 8:30 and 8:45 P.M., and several hours later, while in surgery, Castronova died. Other pertinent facts will be treated in the consideration of the several assignments of error which we now discuss.

1. Error is alleged in admission of the testimony of Silverio (who was missing at the time of trial) which was taken stenographically at a previous trial of the indictments which ended in a jury disagreement. The defendants allege that the Commonwealth had not proved the necessity of it or shown a diligent effort to find the missing witness. A thorough discussion of the problem presented by this assignment is contained in *Commonwealth* v. *Gallo*, 275 Mass. 320. *Barber* v. *Page*, 390 U. S. 719. *California* v. *Green*, 399 U. S. 149. Initially it may be said that the testimony of Silverio was crucial. Apart from the defendants, he was the only other surviving witness to the shooting. His memory of the events was of extreme importance in assessing possible guilt. There thus existed a necessity for his presence in so far as the Commonwealth was concerned. Silverio's testimony had been given at the first complete trial of the charges against these defendants, and at that trial each defendant had a full opportunity to cross-examine him. See *Commonwealth* v. *Mustone*, 353 Mass. 490, 492. Silverio's testimony was available in accurate and complete form and was read to the jury. We hold that the principles which apply in the case of a witness made unavailable by death or insanity likewise apply in this instance.

Furthermore, there is no question but that the Commonwealth had mounted a diligent search. Silverio, a known drug addict, was a familiar person to several police departments, all of which joined in looking for him. His wife, mother, aunt and grandparents were checked. Police in Quincy, Hyde Park, West Roxbury

and Newburyport, with default warrants in hand, were on the lookout for him, and he was particularly sought by his wife for the service of a divorce libel. All of these activities took place shortly before the trial. No further good purpose would be served by describing them in detail. Suffice it to say that our review of the transcript indicates that they constituted a diligent search.

2. One Jones gave evidence that on May 25 or 26, 1970, four or five days after the homicide, Williams approached him to borrow $20, and that he lent Williams that sum, receiving as security a long-barrel black gun with a white handle which had "22" caliber imprinted on it. The defendant Williams objects to this testimony as to the caliber of the gun on the ground that it was hearsay since the out-of-court imprint on the gun is an assertion offered for its truth. We see no error in admitting the evidence. Labels and brand names have been held admissible to prove, e.g., the resident port of a ship. (*Stearns* v. *Doe*, 12 Gray 482) ; the source of beer in a barrel (*Commonwealth* v. *Collier*, 134 Mass. 203) ; the contents of a box (*Kennedy* v. *State*, 182 Ala. 10, 17–18) ; and the contents of a package (*State* v. *Lizotte*, 230 Atl. 2d 414, 417 [Maine]; *State* v. *Rines*, 269 Atl. 2d 9, 13–14 [Maine]). A label indicating the size of a gun is no less competent evidence.

3. Both defendants complain of the refusal of the judge to charge the jury on involuntary manslaughter. "Involuntary manslaughter is an unlawful homicide, unintentionally caused (1) in the commission of an unlawful act, malum in se, not amounting to a felony nor likely to endanger life . . . or (2) by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct." *Commonwealth* v. *Campbell*, 352 Mass. 387, 397. See *Commonwealth* v. *Welansky*, 316 Mass. 383, 399, and *Commonwealth* v. *McCauley*, 355 Mass. 554, 560. The evidence in this case permitted a finding that the deceased was killed by a shot fired by the defendant

Williams standing near the car, with a gun pointed in the deceased's direction. It has been suggested that Williams may have been firing over the head of the victim. However, the trajectory of the bullet was downward through his body and there is nothing in our view to indicate that this weapon was fired as a result of accident or wanton or reckless conduct. The gun had been displayed and was held for a time on both prospective purchasers of the heroin, and there was no evidence to require the judge to charge on an hypothesis suggested by the definition of involuntary manslaughter above set forth.

4. Complaint is made by both defendants that they were not permitted to make an unsworn statement to the jury, a decision which was announced to them after arguments and before the charge to the jury. The defendants themselves did not take the stand during the course of the trial. For reasons fully covered in *Commonwealth* v. *O'Brien,* 360 Mass. 42, 48–50, we conclude that there was no error in the ruling of the judge. We reiterate that permitting such a statement is not now required whether or not a defendant chooses to testify.

5. Motions for directed verdicts for the defendants were denied, and each took exception. In the case of Williams, the evidence tended to establish that he was seen, after leaving the automobile, on the street next to it with a gun in his hand, and that Castronova was shortly thereafter struck by a bullet which cost him his life and which came from the area where Williams stood. It was open to the jury to find on the evidence that the defendant Williams shot Castronova intentionally and with malice aforethought. *Commonwealth* v. *Boyer,* 355 Mass. 762.

We are of a different view in the case against Clark. The identification testimony on Clark was dubious at best. In addition, there was testimony from two imparital witnesses that the description of Clark given by Silverio to the police, with particular reference to his

hairstyle, was at odds with his contemporaneous appearance as they saw it. More persuasive, however, is what we deem to be the failure of the Commonwealth's theory that the two defendants were involved in a joint enterprise which resulted in homicide, making Clark, the nonpossessor of the weapon, equally guilty with Williams. We cannot conclude from our review of the evidence that in the joint effort of selling heroin it could have been contemplated by Clark that the death or injury of Castronova was in aid of the plan. There is no evidence that Clark took any action from which the jury could infer such an intent. While it is true that Williams produced a gun while in the car with Silverio and Castronova, there is nothing to show that Clark had known prior to that time of Williams's possession of the gun or of his intent to use it. Clark alighted on that side of the car opposite to Williams and did nothing to delay the departure of the occupants. The act of Williams appears to have been the act of one alone moved by motives to which Clark was not a party. "[M]ere presence at the commission of the wrongful act and even failure to take affirmative steps to prevent it do not render a person liable as a participant." *Commonwealth* v. *Benders*, 361 Mass. 704, 708. See *Commonwealth* v. *Richards*, *ante*, 299, 305–308.[2] Therefore, Clark could not be found guilty for Williams's act.

6. Clark assigns as error the trial court's denial of his motion to direct the Commonwealth to provide him with criminal records and probation records of its witnesses. However, as Clark concedes, this motion was not simply a mode of discovery of the contents of prosecution files but rather a request to the prosecution

---

[2] There is nothing to show that this case was tried on a theory of felony murder. Therefore the broad standard of complicity formulated in cases such as *Commonwealth* v. *Devereaux*, 256 Mass. 387, 395, and *Commonwealth* v. *Lussier*, 333 Mass. 83, 94, is not applicable. In any case, we agree with the defendant Clark that the joint enterprise had been terminated when the defendants left the automobile. Consequently Clark could not be held liable even under the broad standard.

to take affirmative action to get these records. While it is clear that the defendant is entitled to the names of the Commonwealth's witnesses, and to access to criminal records under the direction of the court, in our view it is not required that the prosecution take affirmative steps in behalf of the defendants to collect their criminal records. This burden rests with the defendants. Furthermore, there is no general pre-trial right to see probation records of witnesses. Cf. *Commonwealth* v. *French*, 357 Mass. 356, 399, A–1, A–3.

Consonant with our power and duty under G. L. c. 278, § 33E, we have reviewed the transcript and we find no reason to disturb the conviction of the defendant Williams on the several indictments brought against him. In view of our stated conclusion relative to the defendant Clark, it follows that judgment against him must be reversed.

*Judgment against the defendant Clark reversed.*
*Verdict against the defendant Clark set aside.*
*Judgments against the defendant Williams affirmed.*