COMMONWEALTH vs. ANTHONY J. CANON.

Middlesex.    June 7, 1976. — October 19, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Public Officer.    Conflict of Interest.    Constitutional Law,* Speedy trial, Confrontation of witnesses. *Evidence,* Previous testimony of unavailable witnesses. *Witness,* Unavailability. *Practice, Criminal,* Charge to jury. *Words,* "Compensation," "Reasonable doubt."

Evidence that a city engineer requested and received the opportunity to participate in a realty investment in return for his promise to render general engineering advice to the other investors and that the success of the venture depended upon the *investor's ability to obtain a* special permit from the city for building apartments warranted a finding that the engineer had received compensation from the other investors "for services rendered in relation to [a] particular matter in which the . . . city . . . [had] a direct and substantial interest," in violation of G. L. c. 268A, § 17 (*a*). [496-498] LIACOS, J., with whom ABRAMS, J., joined, dissenting on the ground that the judge's charge to the jury misconstrued the nature of G. L. c. 268A, § 17 (*a*).

A delay of approximately twelve months from the date of indictments to the commencement of trial did not constitute a denial of the defendant's constitutional right to a speedy trial where there was no showing of prejudice to the defendant occasioned by the period of delay attributable to the prosecutor. [498-499]

Where a witness at a criminal trial invoked his privilege against self-incrimination, his prior recorded testimony at a civil trial in which the criminal defendant had an adequate opportunity for cross-examination was admissible. [499-501] LIACOS, J., with whom ABRAMS, J., joined, dissenting.

INDICTMENT found and returned in the Superior Court on April 10, 1974.

The case was tried before *John P. Sullivan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct review.

*Daniel F. Featherston, Jr.,* for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, for the Commonwealth.

BY THE COURT.    The defendant was convicted of violating the conflict of interest law, G. L. c. 268A, § 17 (*a*).[1] He contends: (1) There was no evidence that he rendered any services to the individuals interested in a real estate venture in which he invested, and their interest was not adverse to the interest of the city where he was a city engineer. (2) His constitutional right to a speedy trial was denied. (3) The testimony of a coindictee at a previous civil trial was erroneously admitted in evidence. (4) The judge erroneously instructed the jury on the meaning of reasonable doubt. We affirm his conviction.

On April 8, 1974, the defendant was indicted for violation of G. L. c. 268A, §§ 2 (*b*), 3 (*b*), 17 (*a*), and 19. He was convicted under § 17 (*a*) but acquitted of the other three charges. He was sentenced to probation for a year, and the probation was terminated on his motion in October, 1975. The case was made subject to G. L. c. 278, §§ 33A-33H, and we transferred the appeal to this court on our own motion.

The following facts are not in dispute. For several years ending in August, 1968, the defendant was the city engineer of Marlborough. Curley was a real estate broker, and Lynch was an attorney. In January, 1968, the three agreed to contribute $500 each to an investment in an option on land in the city, with a view to obtaining a special permit for apartments. The defendant gave Curley a check for $500, the permit was obtained, the land was bought for $40,000 and resold for $100,000, and the defendant received $5,500 in the summer of 1968, the return of his investment and part of his share of the profit. Later he sued Curley and Lynch for the balance of his share, and they defended on the ground that the agreement was illegal under G. L. c. 268A. At trial of the civil action in 1974 the judge directed a verdict for the defendants and referred the case to the district attorney. Further facts will be stated in connection with the claims of error.

---

[1] General Laws c. 268A was inserted by St. 1962, c. 779, § 1. Subsequent amendments do not affect the present case.

1. *Directed verdict.* The defendant's motion for a directed verdict was made and denied at the close of the Commonwealth's case, at the end of all the evidence, and again, at the invitation of the judge, after the verdict. The following evidence, viewed in a light most favorable to the Commonwealth, is pertinent. Lynch was attorney for the owner of the land, and told the owner that a local broker, Curley, was interested in buying it. In 1967 the defendant and Lynch discussed pooling their professional talents and money, and in December, 1967, the defendant advised Curley and Lynch that the land could be connected to Marlborough sewerage, giving them a rough cost figure. Lynch told Curley that he had been to the defendant's office and that the deal would not go through unless the defendant "was aboard." Thereafter Curley went to the defendant's office to examine a plot plan and a topographical survey with respect to the extension of sewer lines. The defendant told Curley the property could be serviced by sewers "if I say it can be," but "unless I'm aboard on this thing, this doesn't go." On January 9, 1968, the defendant met with Curley and Lynch and declared that "there's no way this is going any place without me aboard." He then executed his check and left it on the table, and it was agreed that the defendant would contribute general engineering advice to the project. The agreement was not put in writing because of the defendant's position as city engineer and Lynch's association in law practice with the mayor and city solicitor. The next day, January 10, Curley and the owner of the land executed a purchase and sale agreement for a price of $40,000 with a $1,000 deposit, contingent on the special permit.

The defendant's responsibilities as city engineer included evaluating plans for the installation of utilities including sewer and water service in new housing developments. A plan of the project was seen on a drafting table in his office, and he said he had made a study of the project and had reached certain conclusions about sewer and water service. But his superior told him he need not be-

come involved, since the project had been assigned to a private consulting firm.

The statute, G. L. c. 268A, § 17 (*a*), provides: "No municipal employee shall, otherwise than as provided by law for the proper discharge of official duties, directly or indirectly receive or request compensation from anyone other than the city or town or municipal agency in relation to any particular matter in which the same city or town is a party or has a direct and substantial interest." It is beyond question that the evidence warranted findings that the defendant was a "municipal employee," that he received an economic benefit from persons other than the city, that he received it "in relation to" the special permit for the apartment project, that the granting of the permit was a "particular matter," and that he was not acting "as provided by law for the proper discharge of official duties." It is contended, however, that the economic benefit was not "compensation," defined in G. L. c. 268A, § 1, as "any money, thing of value or economic benefit conferred on or received by any person in return for services rendered or to be rendered by himself or another." It is further contended that the city was not a "party" and did not have "a direct and substantial interest" in the permit.

As to "compensation," the contention is that the defendant received money as a return on his investment rather than "in return for services rendered or to be rendered." But we think the jury were warranted in finding that the defendant requested and received compensation in the form of an opportunity to participate in the realty investment, and that he received that compensation, at least in part, in return for his promise of general engineering advice "to be rendered" by him. That was enough to make it "compensation," even if no services were ever rendered or if the investment produced no profit. Moreover, there was evidence that some services were actually rendered, and that the investment did produce profit. The value of the investment was contingent on the granting of the special permit, which occurred on April 15, 1968, and the defendant received money on account of the profit the

following summer. We think he may properly be said to have "received" compensation after April 8, 1968. Cf. *Commonwealth* v. *Dutney,* 4 Mass. App. Ct. 363, 368-369 (1976). He was indicted within the six-year limitation period thereafter. G. L. c. 277, § 63. We need not pass on the Commonwealth's contention that he was paid for the negative service of not blocking the project.

As to the city's "interest" in the granting of the special permit, we think it is clear that the "interest" need not be financial. Cf. G. L. c. 268A, § 4, where there is explicit reference to a "financial interest." It is hard to hypothesize a "particular matter" involving municipal action in which it can be said with assurance that the municipal interest is indirect or insubstantial. Certainly the city's interest in the proper sewerage for a major apartment development was neither remote nor inconsequential. It is contended, however, that the city's interest was not adverse to that of the developers, since there was testimony that the project was a "good deal" for the city. We need not consider whether there is any requirement that the interest of the city be adverse to that of the person paying the compensation. For any such requirement is fully met when the payor is applying for a municipal decision and the city is cast in the role of objective and impartial arbiter.

The defendant suggests, though he does not argue in any comprehensible way, that the judge's instructions were somehow inadequate. The judge outlined what the statute says, using the statutory language, and the defendant took no exception to the charge. Though the charge may not have been as complete nor as helpful as it might have been, we think it was adequate. As the judge said to counsel, the jury probably had no choice but to come back with a verdict of guilty, since the defendant had admitted the essential elements of the crime.

2. *Speedy trial.* The pre-indictment delay from 1968 to April, 1974, seems to be attributable to the secrecy of the venture. See *United States* v. *Lovasco,* 431 U.S. 783 (1977). More than two months after the indictments the defendant filed several discovery motions, accompanied by

a motion for speedy trial, but his counsel did not appear on the date scheduled for a hearing on those motions. Without objection, the hearing was postponed until October, 1974. At that time the prosecutor expressed willingness to try the case in November, but the defendant's motion to sever his trial from those of Curley and Lynch was allowed and the prosecutor wanted to try one or both of them before the defendant. The defendant made a renewed motion for speedy trial in November, but for reasons not disclosed it was not heard until January, 1975. Trial of Curley and Lynch had been scheduled for January 20, and the defendant's case was scheduled as the first case out on February 3. On January 28, however, the judge vacated that order. A motion filed on April 2 to dismiss for want of a speedy trial was denied on April 8, and trial began April 16, 1975, about a year after the indictments. In the absence of any showing of prejudice, we think no denial of the defendant's constitutional right to a speedy trial is shown by this sequence of events. *Barker* v. *Wingo,* 407 U.S. 514, 530-531 (1972). Although the delay was substantial, the defendant was not incarcerated, and there was no problem of loss of witnesses or failure of memory during the period of delay attributable to the prosecutor. That period was a little over six months, and is explained in part by the problems arising from the allowance of the defendant's motion to sever.

3. *Recorded testimony.* At the trial, out of the hearing of the jury, Curley invoked his privilege against self-incrimination, and the judge allowed a motion to introduce his recorded testimony at the civil trial. It is now claimed that the admission of this evidence violated the defendant's constitutional right to confront the witnesses against him.

Although the defendant does not argue the point, we note that prior recorded testimony is admitted when the witness is unavailable. We have applied this rule to witnesses who were dead, missing, or physically unable to testify. *Commonwealth* v. *Clark,* 363 Mass. 467, 470 (1973), and cases cited. We now apply it to a case where

the witness makes a plausible claim of his privilege against self-incrimination, and is excused from testifying by the judge. *United States* v. *Elmore,* 423 F.2d 775, 778 (4th Cir.), cert. denied, 400 U.S. 825 (1970). *United States* v. *Mobley,* 421 F.2d 345, 350-351 (5th Cir. 1970). See McCormick, Evidence § 253 (2d ed. 1972); 4 J. Weinstein & M. Berger, Evidence par. 804 (a) [01] (1976); Annot., 45 A.L.R.2d 1354 (1956).

The defendant contends that evidence given at a prior civil trial is not admissible at a subsequent criminal trial, since the parties and issues are not the same. We disagree. There is no requirement of "privity," "reciprocity," or "mutuality"; it is only the party against whom the prior testimony is now offered whose presence in the prior suit is significant. See McCormick, Evidence § 256 (2d ed. 1972); 5 J. Wigmore, Evidence § 1388 (Chadbourn rev. 1974). The significant feature is whether that party had an adequate opportunity for cross-examination at the prior trial. Cf. *Travelers Fire Ins. Co.* v. *Wright,* 322 P.2d 417, 421 (Okla. 1958) (testimony in prior criminal case admitted in civil action). See McCormick, *supra,* § 257; Fed. R. Evid. 804 (b) (1) (1975).

Actual cross-examination at the prior trial is not required, but the party against whom the testimony is now offered must have had an adequate opportunity to exercise the right to cross-examine if desired. See 4 J. Weinstein & M. Berger, *supra,* par. 804 (b) (1) [02]. The defendant in the present case called Curley as a witness in the prior civil case, and was entitled to cross-examine him as an adverse party. G. L. c. 233, § 22. The substantial question is whether the defendant then had an adequate motive for the testing on cross-examination of the credibility of Curley's testimony. See 4 J. Weinstein & M. Berger, *supra,* par. 804 (b) (1) [04]; McCormick, *supra,* § 257. The defendant was the plaintiff in the civil case, and Curley as one of the defendants in the civil case was defending on the ground that the agreement of the parties was illegal by reason of violation of G. L. c. 268A. That issue was substantially the same as the issue tried in the present case.

It is not fatal that, as a tactical matter, the examination of Curley at the civil trial was primarily directed to the formation and terms of the agreement rather than to its illegality. Cf. *Poe* v. *Turner*, 490 F.2d 329, 331 (10th Cir. 1974) (cross-examination waived "on a matter that was not a real issue"). The formation and terms of the agreement were very damaging to the defendant on the issue of illegality in both trials.

The defendant argues that his constitutional right to confront the witnesses against him imposes more rigorous limitations than the general law of evidence. He relies particularly on *Mancusi* v. *Stubbs*, 408 U.S. 204, 216 (1972), where the Court said that the prior testimony there in issue bore sufficient "indicia of reliability" and afforded "the trier of fact a satisfactory basis for evaluating the truth of the prior statement." In that case the defendant's first conviction had been set aside by reason of denial of the effective assistance of counsel, and at his second trial an important witness had become unavailable. Recorded testimony given by that witness at the first trial was admitted in evidence, and the defendant contended that the cross-examination at the first trial had been inadequate. The Court held that constitutional requirements were satisfied, since "there was an adequate opportunity to cross-examine" at the first trial, and counsel "availed himself of that opportunity."

We do not think the Court intended to lay down an absolute requirement of actual cross-examination as well as adequate opportunity for cross-examination for cases like the present in which there was no problem of ineffective assistance of counsel. In the present case "indicia of reliability" are furnished by the fact that the defendant, as plaintiff in the civil case, had called Curley as a witness to provide part of the basis for his claim, and by the fact that the defendant's own testimony at both trials corroborated much of Curley's testimony.

4. *Reasonable doubt.* In his charge on reasonable doubt, the judge instructed the jury that they must be convinced of the defendant's guilt with "the kind of cer-

tainty you have when you are involved in those matters of the highest importance to you in your own life." We have several times criticized such instructions as confusing degree of certainty with degree of importance. As in many other such cases, we think the charge in this case, taken as a whole, adequately conveyed the concept of proof beyond a reasonable doubt. See, e.g., *Commonwealth* v. *Fielding,* 371 Mass. 97, 116-117 (1976). Contrast *Commonwealth* v. *Ferreira, ante,* 116, 128-129 (1977).

*Judgment affirmed.*

LIACOS, J. (dissenting, with whom Abrams, J., joins). The defendant in this case is entitled to a new trial on the grounds that (1) the charge to the jury who convicted the defendant did not reflect the construction of G. L. c. 268A, § 17 (*a*), given by the majority opinion; (2) he was convicted under a theory of law which misconstrued the nature of G. L. c. 268A, § 17 (*a*);[1] and (3) the admission of the prior recorded testimony as part of the Commonwealth's case-in-chief denied the defendant his constitutional right to confront his accuser.

This is the first case to reach this court calling for a construction of G. L. c. 268A, § 17 (*a*). The task of interpreting the statute, in harmony with the other provisions of G. L. c. 268A, is one of not inconsiderable difficulty, as is evident from the apparent confusion of both parties and the trial judge as to the nature and scope of the offense defined in § 17 (*a*).

The view of the statute taken by the majority of this court is a view with which I am in accord. The fact is, however, that this record reveals it as a view not followed at the trial by either the prosecutor or an able trial judge — nor is it a view in accord with that of the Appeals Court. Cf. *Commonwealth* v. *Dutney,* 4 Mass. App. Ct. 363

---

[1] The defendant adequately excepted to the charge on this issue by incorporating his arguments relative to his motion for a directed verdict on the issue of the propriety of the charge. See *Commonwealth* v. *Freeman,* 352 Mass. 556 (1967) .

(1976). Some further elaboration of the meaning of § 17 (*a*) seems appropriate in this circumstance.

1. Chapter 268A of the General Laws is a comprehensive measure aimed at thwarting the improper use of influence on State and local public officials. Section 17 (*a*), on which the defendant's conviction is grounded, is specifically directed at regulating the conduct of municipal employees which is inconsistent with the responsibilities inherent in the proper performance of a government job. Conflict of interest laws such as § 17 (*a*) occupy an area between bribery or the offer and acceptance of gratuities and innocent or trivial association with persons seeking the favor of municipal authorities for personal or business reasons. See Staff Report to Subcommittee No. 5, "The Conflict of Interest Laws," House Committee on the Judiciary, 85th Cong., 2d Sess. (March 1, 1958).

The conduct proscribed by § 17 (*a*) is the request or receipt, by a municipal employee, of compensation from a nonmunicipal source whose private interests relate to a particular matter in which the municipality has a direct and substantial interest. Compensation, as defined by § 1 of c. 268A, includes "any money, thing of value or economic benefit conferred on or received by any person in return for services rendered or to be rendered by himself or another."

Section 17 (*a*) tracks the provisions of 18 U.S.C. § 203 (1970). See Buss, The Massachusetts Conflict of Interest Statute: An Analysis, 45 B.U.L. Rev. 299 (1965); R. Braucher, Conflict of Interest in Massachusetts, in Perspectives of Law, Essays for Austin Wakeman Scott 8 (1964); see generally B. Manning, Federal Conflict of Interest Law (1964). As such, it is clear that the intent of the Legislature in enacting § 17 (*a*) was to incorporate, as the crucial elements of this offense, those elements which are the basis of the correlative Federal offense. These elements are (1) the receipt of compensation as defined in § 1, (2) contingent on the receipt or promise of services rendered. In the absence of either element, the apparent impropriety of the official's conduct does not make out the

offense under § 17 (*a*). See Manning, *supra* at 36. Conversely, it is immaterial that the services rendered or to be rendered in exchange for the compensation may be viewed as otherwise proper in nature. *Id.* at 36, 43. See *May* v. *United States*, 175 F.2d 994, 1006 (D.C. Cir. 1949). This section of the statute reflects the old maxim that "a man cannot serve two masters." It seeks to preclude circumstances leading to a conflict of loyalties by a public employee. As such, it does not require a showing of any attempt to influence — by action or inaction — official decisions. What is required is merely a showing of an economic benefit received by the employee for services rendered or to be rendered to the private interests when his sole loyalty should be to the public interest.

It seems equally clear that not every act by a municipal employee may serve as the basis of an indictment which fails to discriminate between the various activities proscribed by the statutory scheme. What once were the activities involved in the so called bribery offenses under G. L. c. 268, § 8, are now covered by G. L. c. 268A, particularly §§ 2 (*b*) and 3 (*b*). See *Commonwealth* v. *Stasiun*, 349 Mass. 38 (1965). Other penal offenses are defined by the statute in various sections. Additionally, a number of proscribed acts are covered by G. L. c. 268A, § 23, in nonpenal terms. Such latter acts may be grounds for administrative action against the offending employee whether covered by the criminal provisions of the statute or not.

In the case currently before the court for decision, the defendant concedes that he was the city engineer of Marlborough during the planning stages of the real estate investment scheme and at the time he received an initial payment of $5,000 following the sale of what was called the Davenport parcel to the developer. However, the defendant argues, in effect, that the $5,000 he received did not constitute compensation from a private source within the meaning of the statute. The defendant does not deny that the $5,000 payment he accepted was a direct consequence of the sale of the Davenport property to the developer, but he contends that the Commonwealth failed to demon-

strate that he had rendered any services in exchange for the economic benefit he realized on the real estate venture. He argues that he was an investor like any other and that, absent evidence of services (or the promise of them) which were exchanged for compensation from a private source, the Commonwealth makes out no case under § 17 (*a*). The Commonwealth's response appears to be that a prima facie case is made by evidence (here present) that the defendant promised not to interfere with official municipal approval of the project if he was allowed to become an investor in the project. Assuming the Commonwealth's argument to be valid, it is an argument more properly addressed to the offense alleged under G. L. c. 268A, § 2 (*b*) (3),[2] or § 3 (*b*),[3] a charge which went to the jury and of which the defendant was acquitted. I cannot ascribe to the Legislature an intent to be redundant. It seems clear that, if the defendant were receiving a benefit in order to affect his official conduct or to refrain from interfering with the progress of an application for a special permit as was here involved, that might well be an offense under G. L. c. 268A, §§ 2 (*b*) and 3 (*b*).[4] Section 17 (*a*), on the other hand, reaches an area of activity not proscribed by either of those sections. In short, I construe this section so as to

---

[2] General Laws c. 268A, § 2 (*b*) (3), reads as follows: "(*b*) Whoever, being a state, county or municipal employee or a member of the judiciary or a person selected to be such an employee or member of the judiciary, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives or agrees to receive anything of value for himself or for any other person or entity, in return for ... (3) being induced to do or omit to do any acts in violation of his official duty."

[3] General Laws c. 268A, § 3 (*b*), reads as follows: "(*b*) Whoever, being a present or former state, county or municipal employee or member of the judiciary, or person selected to be such an employee or member of the judiciary, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly, asks, demands, exacts, solicits, seeks, accepts, receives or agrees to receive anything of substantial value for himself for or because of any official act or act within his official responsibility performed or to be performed by him."

[4] Cf. *Commonwealth* v. *Dutney,* 4 Mass. App. Ct. 363 (1976). To the extent that *Dutney* indicates that the offenses proscribed by G. L. c. 268A, §§ 2 (*b*) and 3 (*b*), are identical with that defined by § 17 (*a*), it should not be followed. I do not reach the point whether *Dutney* correctly holds that § 3 (*b*) is a lesser included offense under § 2 (*b*).

make criminal what had not been so prior to the enactment of G. L. c. 268A, namely, to receive compensation from private sources for services rendered, or to be rendered, to such private sources in any particular matter in which the municipality has a direct and substantial interest.

It is incumbent on the Commonwealth under this view of § 17 (*a*) to show that the employee rendered or promised services in exchange for money and in relation to a particular matter in which the municipality has a direct and substantial interest. The particular matter in this case is the issuance of the special permit.

The Commonwealth argues that the defendant's general "study" of the sewer problems for the site constitutes a rendering of services. I would agree that as a general matter such action in exchange for money would constitute a violation of § 17 (*a*), and there was sufficient evidence of such services in exchange for compensation (i.e., defendant's investment interest) to deny the motion for a directed verdict. Where the difficulty arises is that neither the judge's view of the case as expressed in his denial of the motion for a directed verdict, his charge, nor the Commonwealth's response to the defendant's motion for a bill of particulars or its presentation of the case defined this aspect as the Commonwealth's basis of alleged criminal conduct at the trial. To say that the defendant's conviction should stand because, in any event, a jury judging the facts of a case tried on a correct theory of law could have reached a verdict of guilty is improperly to invade the province of the jury to weigh the relevant evidence in accord with the applicable legal principles.

The law of this case, as tried and submitted to the jury, was not in accord with the majority's view of the nature of the crime under the statute. See *Commonwealth* v. *Graves*, 363 Mass. 863, 868 (1973). The judge's understanding of § 17 (*a*) seemed to rest on the proposition that only the receipt of money need be shown to justify the conviction. Nowhere were "services" as discussed here or in the majority opinion defined; nor need they have been under the judge's view of the case. It follows that

the construction given the statute by the majority and myself cannot be used retroactively to validate a conviction based on an entirely different theory of what constituted the offense. I believe the conviction should be reversed so that the defendant can have the opportunity to defend this case on a theory consistent with the statutory prohibition.

2. During the Commonwealth's case-in-chief, testimony given at a prior civil trial by a coindictee, one Curley, was read in evidence following Curley's refusal to testify on Fifth Amendment grounds. The defendant contends that the admission of Curley's former testimony violated his Sixth Amendment right "to be confronted with the witnesses against him."[5] I would hold that the introduction in this case of testimony given in a prior civil proceeding by an individual who was thereafter indicted with the defendant abridged the defendant's constitutional right to be confronted with adverse witnesses.

Where the unavailability of a witness has been diligently established, we have sanctioned the introduction of testimony given at the defendant's initial criminal trial involving similar charges at which the defendant had an opportunity to cross-examine the witness. *Commonwealth* v. *Clark,* 363 Mass. 467, 470 (1973). *Commonwealth* v. *Gallo,* 275 Mass. 320, 328-334 (1931). *Commonwealth* v. *Glassman,* 253 Mass. 65, 73-74 (1925). *Commonwealth* v. *Richards,* 18 Pick. 434, 437-440 (1837). Accord, *Mancusi* v. *Stubbs,* 408 U.S. 204 (1972); *Mattox* v. *United States,* 156 U.S. 237 (1895). Similarly, we have authorized the introduction at a criminal trial of testimony given at preliminary hearings in the same criminal proceedings when the defendant had the opportunity during the preliminary hearing to cross-examine the witness and where the testimony of that witness was demonstrated to be unavailable at the defendant's trial. *Commonwealth* v. *Caine,* 366

---

[5] Article 12 of the Declaration of Rights of the Massachusetts Constitution sets forth a similar right to meet adverse witnesses "face to face." The confrontation clause of the Sixth Amendment to the United States Constitution was applied to State proceedings through the Fourteenth Amendment in *Pointer* v. *Texas,* 380 U.S. 400 (1965).

Mass. 366, 371-372 (1974). *Commonwealth* v. *Mustone,* 353 Mass. 490, 492-493 (1968). *Commonwealth* v. *Caruso,* 251 Mass. 362, 366-367 (1925). Cf. *Andrews, petitioner,* 368 Mass. 468, 477 (1975). Accord, *United States* v. *Bell,* 500 F.2d 1287, 1290 (2d Cir. 1974) ; *Havey* v. *Kropp,* 458 F.2d 1054, 1057 (6th Cir. 1972). Cf. *California* v. *Green,* 399 U.S. 149 (1970) (testimony given by a witness at a preliminary hearing, at which the defendant had an opportunity to cross-examine the witness, was properly introduced at the defendant's subsequent trial when the witness was available and subject to full cross-examination) ; *United States* v. *Ricketson,* 498 F.2d 367, 374 (7th Cir. 1974) ; *United States* v. *Singleton,* 460 F.2d 1148, 1152-1153 (2d Cir. 1972) (admitting a deposition at the defendant's trial did not violate the Sixth Amendment where the defendant had an opportunity to cross-examine the deponent when the deposition was taken and where the deponent was unavailable at trial).

The question presently before us is markedly different from that decided in the preceding cases. Nor is the question here the same as that before this court in the recently decided case of *Commonwealth* v. *DiPietro, ante,* 369 (1977). The issue here is whether a defendant's constitutional right of confrontation is breached by the introduction of former testimony given during a civil trial by a witness whose live testimony becomes "unavailable" at the defendant's subsequent criminal trial. This case exhibits a perceptible discord between the interests protected by the right of confrontation and the rationale which supports the well recognized exception to the hearsay rule permitting, under special conditions, the admission of testimony given during a prior judicial proceeding.

Both the courts[6] and legal commentators[7] have recognized that the confrontation right and the hearsay rule

---

[6] *California* v. *Green,* 399 U.S. 149, 155 (1970). *Dutton* v. *Evans,* 400 U.S. 74, 86 (1970).

[7] 5 J. Wigmore, Evidence § 1395 (Chadbourn rev. 1974) (hereinafter cited as Wigmore). See McCormick, Evidence § 252 (2d ed. 1972) (hereinafter cited as McCormick).

safeguard similar values. However, the courts have been careful to note that the parameters of the confrontation clause and the hearsay rule are not congruent. Therefore, even though some hearsay statements are constitutionally admissible, exceptions to the hearsay rule do not uniformly contour the confrontation clause. *Dutton* v. *Evans,* 400 U.S. 74, 86 (1970).[8] *California* v. *Green, supra* at 155.

"The right to confrontation is basically a trial right." *Barber* v. *Page,* 390 U.S. 719, 725 (1968). It is designed to make prosecution witnesses available for full cross-examination by the defendant and to ensure that the testimony of a witness is given under oath before the jury who will have an opportunity to observe the demeanor of the witness as he testifies. The right entitles the defendant to confront adverse witnesses personally. "The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox* v. *United States,* 156 U.S. 237, 242-243 (1895).

When a prosecution witness becomes unavailable after testifying at a pre-trial hearing or at the defendant's first trial, and a second trial becomes necessary, the Supreme Court has concluded that the substance of the confrontation right was afforded the defendant by the advantage he "once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." *Mattox* v. *United States, supra* at 244. Accord, *Commonwealth* v. *Gallo,* 275 Mass. at 328-334.

---

[8] Dean Wigmore argues, however, that confrontation is an element of the hearsay rule and hence is merely another name for the opportunity of cross-examination. 5 Wigmore §§ 1366, 1397.

At the outset of the defendant's trial on the conflict of interest indictments, the Commonwealth presented a motion to the trial judge seeking an order compelling coindictee Curley to testify on the theory that he had waived his right to assert the privilege against self-incrimination to the extent that he testified before the grand jury and at the prior civil trial on matters related to the criminal charges. Alternatively, the Commonwealth sought permission to introduce Curley's stenographically recorded testimony given during the earlier civil trial. The judge denied the Commonwealth's motion to compel Curley to testify but thereafter allowed the Commonwealth to introduce portions of the testimony given by Curley at the civil trial. The judge never articulated his reasons for permitting Curley's Fifth Amendment claim to stand. The majority opinion finds that a "plausible" claim of the privilege is sufficient. If "plausible" means "valid," I agree. It seems to me, however, that a decision resulting in a loss of a constitutionally protected interest should be more specific as to the particular circumstances which warrant the kind of procedure here used.

The unavailability of a witness during a criminal trial is a condition precedent to the introduction of former testimony in conformance with the confrontation clause and the exception to the hearsay rule. Plainly the unavailability of a witness is established when the individual's physical presence is impossible to procure. However, the salient consideration is not whether the individual's physical presence is obtainable, but whether the testimony of that person is available. *Mason* v. *United States*, 408 F.2d 903, 906 (10th Cir. 1969), cert. denied, 400 U.S. 993 (1971). Accord, *Poe* v. *Turner*, 490 F.2d 329, 332 (10th Cir. 1974); *United States* v. *Allen*, 409 F.2d 611, 613 (10th Cir. 1969); 4 J. Weinstein & M. Berger, Evidence par. 804 (a) [01] (1976) (Weinstein & Berger); McCormick § 253.

I agree that, when a prospective witness *validly* declines to testify based on a proper assertion of the Fifth Amendment guaranty against self-incrimination or steadfastly refuses to testify despite a court order to do so, the testi-

mony of that witness is rendered unavailable. *United States* v. *Elmore,* 423 F.2d 775, 778 (4th Cir.), cert. denied, 400 U.S. 825 (1970). *United States* v. *Allen, supra* at 613. *Mason* v. *United States, supra* at 906. Fed. R. Evid. 804 (a) (1). See Cal. Evid. Code § 240 (a) (1) (West); 4 Weinstein & Berger par. 804 (a) [01]; McCormick § 253; Annot., 45 A.L.R.2d 1354 (1956).

The right to confront a witness before the jury who hear the case should not be lost in the absence of a clear showing of need. Liacos, The Right of Confrontation, 33 Am. Trial Law. J. 243 (1970). Liacos, The Right of Confrontation and the Hearsay Rule: Another Look, 34 Am. Trial Law. J. 153 (1972). I note in this regard that the record fails to reveal any findings by the judge on the issue of whether or not a witness's prior testimony constitutes a waiver of the privilege. In these circumstances, the record fails to demonstrate satisfaction of even the threshold justification of a use of the Curley transcript in lieu of his live testimony.

Additionally, the unavailability of Curley's live testimony at the defendant's trial on the conflict of interest indictments is only an initial factor in a determination whether the former testimony was properly placed before the jury. Because the use of Curley's former testimony prevented the defendant from physically confronting Curley during the criminal proceedings, the circumstances in which the former testimony was given must be examined to ascertain whether the testimony was given in compliance with the requisites of the confrontation clause. Of primary concern is whether Curley's testimony in the civil trial bore sufficient "indicia of reliability," *Mancusi* v. *Stubbs,* 408 U.S. at 213; *Dutton* v. *Evans,* 400 U.S. at 89, to afford a satisfactory basis for the jury in the defendant's subsequent criminal trial to evaluate the trustworthiness of the prior testimony.

Opportunity and motive for cross-examination are the most crucial factors in any evaluation of the reliability of former testimony. The prior judicial proceeding must furnish the defendant with an opportunity to confront the

witness directly and to cross-examine him while he is under oath. More importantly, the considerations which guide the conduct of the cross-examination or the decision to waive cross-examination during the prior trial must be functionally equivalent to the considerations which prevail at the later trial where the former testimony is introduced. The defendant must have been a party to the earlier action. The confrontation clause permits nothing less. The issue on which the testimony was introduced in the first proceeding as well as the purpose for which the testimony was offered must be substantially similar to the issue and purpose for which the same testimony is offered at the subsequent criminal trial. See McCormick § 257. The issue and the purpose for offering the testimony need not be identical in both proceedings, but they must be sufficiently similar to ensure that the defendant had the same motive for cross-examining the witness at the earlier proceeding as he would have had at the later criminal trial, if the witness had appeared to testify. See *Poe* v. *Turner, supra; Peterson* v. *United States,* 344 F.2d 419, 424 (5th Cir. 1965); *United States* v. *Franklin,* 235 F. Supp. 338, 341 (D.D.C. 1964); Fed. R. Evid. 804 (b) (1); McCormick § 257; 5 Wigmore § 1387; 4 Weinstein & Berger par. 804 (b) (1) [04]. Cf. *United States* v. *Wingate,* 520 F.2d 309, 316 (2d Cir. 1975); *First Nat'l Bank* v. *National Airlines, Inc.,* 22 F.R.D. 46, 48 (S.D.N.Y. 1958).

The defendant in the present case was a party plaintiff in the prior civil proceeding. That trial was the result of an action initiated against Curley and Lynch by him to recover his share of the profits realized by the real estate investment venture. Among the defenses relied on by Curley and Lynch was the assertion that the agreement to include the defendant in the real estate venture was illegal because it violated G. L. c. 268A. Curley was called by the defendant to testify about the real estate venture and the oral agreement which made the defendant a coinvestor in the project. Having called the opposing party while putting in his own case, the defendant was entitled to cross-examine him. G. L. c. 233, § 22. However, the issue on

which Curley's testimony was introduced was whether an agreement to include the defendant in the real estate venture had been reached by the parties. The defendant's motive for examining Curley was to demonstrate that an agreement had been concluded which made the defendant a participant in the project and entitled him to receive an equal share of the profit realized by the venture. Conversely, the testimony given by Curley in the civil trial was introduced by the Commonwealth at the defendant's criminal trial to prove that the defendant had illegally used his public office to foster private gain. Had Curley testified in person at the defendant's trial on the indictments, the defendant's motive for cross-examining him would certainly have been altered. He would have undoubtedly probed for inaccuracies and inconsistencies in Curley's testimony and he would have had a stronger motive to impeach the witness.

Equally important in considering whether the defendant's motive for cross-examining the witness was the same in both proceedings is the obvious shift in the underlying liability associated with the cases. In the civil action the defendant sought a financial recovery on the basis of an alleged breach of contract, but in the criminal prosecution, not only his liberty, but his personal and professional reputation in the community, was at stake. The crucial question whether private services were promised or rendered to the private project by the defendant was not in issue at the civil trial. Although one of the defenses asserted in response to the defendant's contract claim was the alleged illegality of the agreement, the foundational theory and liability of the two cases were not parallel.

In the circumstances of this case, Curley's testimony at the civil trial failed to contain sufficient indicia of reliability to justify its placement before the jury in the defendant's trial on the conflict of interest indictments. The defendant is therefore entitled to a new trial at which his right to confront Curley will not be abridged by the introduction of testimony given by that witness in the earlier civil proceeding.

ABRAMS, J. (dissenting, with whom Liacos, J., joins). I respectfully dissent from the failure of the majority to grant a new trial in this case. The well established law in this Commonwealth is that the judge has a duty "to declare what the law is, with its exceptions and qualifications, to explain it, and to state the reasons and grounds of it," in such a way that the law will be "clearly intelligible to the minds of men of good judgment and common experience, but without legal knowledge and skill." *Commonwealth* v. *Porter,* 10 Met. 263, 283 (1846) (Shaw, C.J.)

Although the trial judge read the statute to the jury, in his conscientious attempt to distinguish § 17 (*a*) from § 2 (*b*) and § 3 (*b*), he appears to have adopted the position that only the receipt of money need be shown to justify a conviction under § 17 (*a*). Such a view is not in accord with the interpretation this court today places on § 17 (*a*).[1] Nevertheless, the majority find that the jury instructions were adequate and that the jury were warranted in returning a guilty verdict. While I agree with the court's construction of § 17 (*a*), and while, in my view, ample evidence exists on which a jury *could* convict Canon, I disagree with the majority's disposition of this case. The majority assume without discussion that a jury would agree with them and would convict the defendant under today's interpretation of § 17 (*a*). Even assuming this to be the fact, I think that basic fairness and a proper regard for the jury system require that we grant the defendant a new trial.

In the past we have held it fundamental that jurors be guided by clear and correct instructions on the applicable legal principles. *Commonwealth* v. *Corcione,* 364 Mass.

---

[1] Although the defendant did not take a specific exception to the instructions, after the charge he did except to the denial of his request for instructions. The judge's construction of the statute was in issue throughout the trial, and the defendant's exception thereto is, in my view, sufficient to preserve the issue of the adequacy of the instructions for review on appeal. See *Commonwealth* v. *Crosscup,* 369 Mass. 228, 241 (1975); *M. DeMatteo Constr. Co.* v. *Commonwealth,* 338 Mass. 568, 587-589 (1959).

611, 618 (1974). *Commonwealth* v. *Kelley,* 359 Mass. 77, 92 (1971). *Commonwealth* v. *Rollins,* 354 Mass. 630, 638 (1968). *Commonwealth* v. *Carson,* 349 Mass. 430, 435 (1965). *Commonwealth* v. *Porter, supra* at 283. See *Commonwealth* v. *Benders,* 361 Mass. 704 (1972). Instructions which are prejudicially erroneous or misleading on a crucial point of law have always required a new trial. *Commonwealth* v. *Corcione, supra* at 616-618. *Commonwealth* v. *Benders, supra* at 707-708. *United States* v. *Brewster,* 506 F.2d 62, 82-83 (D.C. Cir. 1974). Cf. *Commonwealth* v. *Albert,* 310 Mass. 811, 812 (1942). See *Commonwealth* v. *Freeman,* 352 Mass. 556 (1967). This result follows irrespective of the fact that ample evidence might exist to support the verdict on a correct theory of law. Jurors, not judges, decide the issue of guilt or innocence. See *Commonwealth* v. *Corcione, supra* at 617; *Commonwealth* v. *Benders, supra* at 707-708. Cf. *Commonwealth* v. *Albert, supra* at 820-821; *Adamaitis* v. *Metropolitan Life Ins. Co.,* 295 Mass. 215, 221 (1936).

There is no reason to depart from basic principles in this case. Indeed, fairness mandates otherwise. Canon should not be the only exception to a general rule. The trial, the arguments, and the instructions all suggested to the jury that only the receipt of money need be shown to justify a conviction under § 17 (*a*). The jurors were not given any specific guidance on the essential element of "services rendered or to be rendered."

Moreover, under our legal system, the responsibility for stating and explaining the law is allocated to the judge, and the duty of deciding questions of fact and of applying the law to the facts is given to the jury. *Commonwealth* v. *Abbott,* 13 Met. 120, 124 (1847). *Sparf & Hansen* v. *United States,* 156 U.S. 51, 102, 106 (1895). *Commonwealth* v. *Dickerson,* 372 Mass. 783, 798, 800-802 (1977) (Quirico, J., concurring). This division of functions between the judge and the jury has long been recognized as an essential element in providing justice: "In this separation of the functions of court and jury is found the chief value, as well as safety, of the jury system. Those func-

tions cannot be confounded or disregarded without endangering the stability of public justice, as well as the security of private and personal rights." *Sparf & Hansen* v. *United States, supra* at 106. See *Commonwealth* v. *Bellino,* 320 Mass. 635, 639, cert. denied, 330 U.S. 832 (1947). The failure to grant Canon a new trial blurs the distinction between these functions.

Finally, the jury system provides the most important means by which laymen can participate in and understand the legal system. "It makes them feel that they owe duties to society, *and that they have a share in its government....* The jury system has for some hundreds of years been constantly *bringing the rules of law to the touchstone of contemporary common sense"* (emphasis supplied). 1 W. Holdsworth, A History of English Law 348-349 (3d ed. 1922).

I dissent from the majority's disposition of this case since it appears to me to be but the first step in diminishing the extent of citizen participation in the administration of justice and the many benefits which flow from such participation.

For these reasons, where, as here, there is a material disparity between our interpretation of a statute and that given the statute at trial, a new trial is mandated. "[W]e have no authority to take upon ourselves the duties of a tribunal of fact, and to determine what verdicts should have been rendered by the jury.... Convenient and helpful as it might be to the litigants to have these cases finally decided without further litigation, we must decline to act extrajudicially in a matter that comes before us sitting as a court." *Electric Welding Co.* v. *Prince,* 200 Mass. 386, 392 (1909).