## COMMONWEALTH vs. THOMAS M. LITTLE.

Suffolk. February 3, 1981. — August 5, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Jury. *Jury and Jurors. Practice, Criminal,* Challenge of jurors, Instructions to jury, New trial.

The judge at a murder trial did not err in seating a black venireman on the jury over the defendant's objection after defense counsel admitted that he was using his peremptory challenges to exclude blacks from the jury. [264-265]

A judge's use of an example from everyday life in that part of his charge dealing with the jurors' responsibility to draw reasonable inferences from the evidence could not have been understood by the jurors as being applicable to his instructions with respect to proof beyond a reasonable doubt. [266-267]

At a murder trial, there was no error in the judge's instructions on malice aforethought. [267-268]

On a motion for a new trial, the judge was warranted in concluding that the testimony of a member of the defendant's motorcycle club, who claimed that he, not the defendant, had stabbed the victim, was not credible and that the evidence was not newly discovered because the defendant knew the content of the witness's testimony prior to the trial and decided for tactical reasons not to disclose it during the trial. [268-270]

INDICTMENTS found and returned in the Superior Court Department on March 6, 1979.

The cases were tried before *Sullivan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*John P. White, Jr. (Richard Fell* with him) for the defendant.

*John Kiernan,* Assistant District Attorney *(Kevin Connelly,* Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J.  In the early morning hours of February 25, 1979, Stephen Martin was stabbed to death, and Charles Martin, Stephen's brother, was the victim of an assault and battery by means of a dangerous weapon.  The defendant, Thomas Little, was indicted for murder in the first degree in Stephen Martin's death, and after trial by jury was convicted of murder in the second degree.  Little was also convicted of assault and battery by means of a dangerous weapon on Charles Martin.[1]  Little appealed, and we transferred the case to this court on our own motion.  On appeal Little challenges (1) the propriety of seating a black venireman on the jury over his objection, (2) the jury instructions, and (3) the trial judge's denial of his motion for a new trial based on newly discovered evidence.  The defendant asks that we exercise our power under G. L. c. 278, § 33E,[2] to order a new trial or to direct the entry of a verdict of a lesser degree of guilt.  We find no error.  We conclude that the convictions should be affirmed and that we should not exercise our power under § 33E in favor of the defendant.

We summarize the evidence.  At approximately 1:10 A.M. on February 25, 1979, Charles Martin was walking near D'Amato's Lounge in Cleary Square, Hyde Park, when two men seized him, threw him onto the hood of a parked automobile, put a knife to his throat, and repeatedly struck him in the face.  Little was identified by two witnesses as the person holding the knife to Charles Martin's throat.  Charles yelled for help, and then lost consciousness.

Charles Martin's brother Stephen approached the automobile where the two men were holding Charles.  Little

---

[1] Little was sentenced to a term of life at the Massachusetts Correctional Institution, Walpole, on the conviction of murder in the second degree. He was also sentenced to a term of not more than five nor less than three years on the conviction for assault and battery by means of a dangerous weapon.  This sentence was ordered by the judge to be served concurrently with the life sentence.

[2] Since the defendant was convicted of murder in the second degree on an indictment charging murder in the first degree for an offense committed on February 25, 1979, this case is entitled to be reviewed pursuant to § 33E.  See *Commonwealth* v. *Davis*, 380 Mass. 1, 16 (1980).

turned, lunged at Stephen, and was observed striking him three or four times. Stephen Martin fell backward, his shirt covered with blood. Little was the only person seen near Stephen Martin at the time; a person sitting in a car nearby yelled that she had seen Little stabbing Martin.

Little was seen dropping a "shiny" object in the street, kicking the object, and then picking it up. Prior to arresting Little, a Boston police officer saw him throw a knife into a trash receptacle. Shortly thereafter, Little was placed in a police wagon with Charles Martin. A sheath found in the police wagon bore the same markings as a knife recovered from the trash can.

There was defense evidence that the defendant had been drinking heavily during the afternoon and evening hours of February 24, 1979, and that Little had not fought with anyone that evening. Members of the motorcycle club to which Little belonged testified that some other unknown individual had stabbed Stephen Martin.

*The misuse of peremptory challenges.* Little claims that the judge erred in seating a black juror over his objection. The Commonwealth objected to Little's exclusion of black jurors through peremptory challenges. The judge asked the defendant to explain his use of peremptory challenges.[3] Defense counsel candidly admitted that he was using his peremptory challenges to exclude blacks from the petit jury. He asserted that due to ongoing racial tension in the city of Boston, the presence of blacks on the jury might prejudice the defendant's right to a fair trial. The judge then sustained the Commonwealth's objection and ordered that the challenged black juror be seated. Little moved for a mistrial, which was denied.

The defendant claims on appeal that his right to due process of law was denied since he could not freely exercise

---

[3] The discussions concerning the peremptory challenges took place in conferences with the judge at the bench and in his chambers. Thus, we are not faced with a claim that the juror who was seated over the defendant's objection might be biased by the fact that he knew the defendant had attempted to strike him from the petit jury.

his right to employ peremptory challenges. In *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979), "we reexamined this right and prohibited its misuse to eliminate jurors solely because of their membership in discrete groups." *Commonwealth* v. *Allen*, 379 Mass. 564, 576 (1980). See *Commonwealth* v. *Reid, ante* 247 (1981). We also stated that the *Soares* principle applies to a defendant as well as the Commonwealth. See *Commonwealth* v. *Reid, supra* at 253; *Soares, supra* at 489 n.35.

The fact that the defendant and the victim were of the same race and that the challenged jurors were of a different race does not detract from the Commonwealth's right to be protected from the improper use of peremptory challenges by defendants. "[C]ommon group membership of a defendant and those jurors excluded is not a prerequisite to assertion of the right [to a representative jury]." *Commonwealth* v. *Soares, supra* at 490. Underlying *Soares* is the belief that the "diversity of opinion among individuals, some of whose concepts may well have been influenced by their group affiliations," is essential to a fair and impartial trial, and that "[n]owhere is the dynamic commingling of the ideas and biases of such individuals more essential than inside the jury room." *Soares, supra* at 486-487. The judge correctly denied Little's attempt to eliminate diversity of opinion on the petit jury. There is no error.

*The instructions to the jury.* The defendant challenges the judge's instructions to the jury on malice and proof beyond a reasonable doubt. Since the defendant failed to object at trial, we review the challenged instructions to determine whether the charge as given created "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Sellon*, 380 Mass. 220, 232 n.18 (1980), quoting from *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 425 (1978).

In support of his contention, Little "parses the charge and attacks it piecemeal. We, however, view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Com-*

monwealth v. *Sellon, supra* at 231-232. *Commonwealth* v. *Garcia*, 379 Mass. 422, 440 n.12 (1980). *Commonwealth* v. *Godin*, 374 Mass. 120, 130 (1977), cert. denied, 436 U.S. 917 (1978). *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 690-691 (1976), and cases cited.

A. *Reasonable doubt.* There is no merit in the defendant's challenge to the jury instructions dealing with proof beyond a reasonable doubt.[4] The language of the charge

---

[4] The judge stated: "Now that standard imposed upon the Commonwealth is the standard of proof beyond a reasonable doubt. I am going to read to you language which was approved by the Supreme Judicial Court and, since this proposition is so critical and because I understand that the following language which is read is difficult, I am going to ask you to pay especial attention to it while I read it to you. The Court says:

"'Proof beyond a reasonable doubt does not mean proof beyond all doubt nor proof beyond a whimsical or fanciful doubt nor proof beyond the possibility of innocence. A reasonable doubt does not mean such doubt as may exist in the mind of a man who is earnestly seeking for doubts or for an excuse to acquit a defendant, but it means such doubt as remains in the mind of a reasonable man who is earnestly seeking the truth. A fact is proved beyond a reasonable doubt when it is proved to a moral certainty as distinguished from an absolute or mathematical certainty, the kind of certainty you have when you add two and two and get four, when it is proved to a degree of certainty that satisfies the judgment and the consciences of the jury as reasonable men and women and leaves in their minds a clear and settled conviction of doubt [*sic*]. But if, when all is said and done, there remains in the jury any reasonable doubt of the existence of any fact which is essential to the guilt of the defendant, the defendant must have the benefit.

"'It is not proof beyond all reasonable doubt, all imaginary doubt, but such proof as precludes every reasonable hypothesis except that which it tends to support. It is proof to a moral certainty as distinguished from an absolute certainty. It signifies such proof as satisfies the judgment and the consciences of the jury as reasonable people in their applying reason to the evidence before them that the crime charged has been committed by the defendant and so leaves them with no other reasonable conclusion possible.

"'The jury must be satisfied to a reasonable and moral certainty that the defendant committed the crime for which he is charged or the crimes for which he is charged. It is not enough to establish a probability that the fact charged is more likely to be true than the contrary. The evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces and directs the judgment and satisfies the understanding and the reason of those who are bound to act conscientiously upon it.'"

faithfully tracks the language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). The defendant asserts that in this part of the charge the judge improperly used a trivializing reference to examples taken from the jurors' lives. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 438-442 (1980); *Commonwealth* v. *Ferreira*, 373 Mass. 116, 128-130 (1977). The defendant misreads the charge. At no time in his explanation of reasonable doubt did the judge refer to an example from everyday life. See note 4, *supra*. An example is used in that part of the charge dealing with the jurors' responsibility to draw reasonable inferences from the evidence. The judge specifically prefaced that passage by saying, "Let's talk about the concept of circumstantial evidence and inferences for just a moment."[5] The use of such an example to illustrate the concept of a reasonable inference does not run afoul of the principles set forth in *Ferreira* and *Garcia*, *supra*. No reasonable juror could have understood the use of an example to explain inferences as being applicable to the requirement of proof beyond a reasonable doubt.

B. *Malice aforethought.* Little objects to that portion of the charge on malice aforethought as burden shifting. The charge, however, squarely places the burden of proof on the Commonwealth. In effect, the defendant's quarrel is with the definition of "malice aforethought" rather than with the precise words used by the judge. "Malice aforethought" is a

---

[5] The judge further stated: "Let me give you an example. Let's assume that you were driving along a highway in the very early hours of a February morning and there was no traffic on the road, and you came across some skid marks and the carcass of a dead animal. Now, the facts that you observed would be the skid marks and the carcass of the dead animal, but it would be perhaps natural for you to infer from those observed facts the existence of a fact scene which you have not observed, namely, that sometime prior to your arrival on the scene another car was driving by and an animal ran out in front of it, the operator attempted to avoid striking the animal, hence the skid marks, wasn't able to, struck the animal and continued on, drove away. Now, that collision between the vehicle and the animal is not something you observed but something you inferred from the facts that you did observe.

"And so, you as jurors, are entitled to make inferences if they naturally and logically follow from those facts that you find to have been observed."

"very technical and somewhat misleading expression of the law," *Commonwealth* v. *Madeiros*, 255 Mass. 304, 309 (1926), and the simplification of the term "is doubtless desirable," *Commonwealth* v. *Starling*, 382 Mass. 423, 428 (1981). Nonetheless, "[m]odernization of jury instructions on the subject, however desirable, would savor of statutory revision, a Legislative prerogative." *Id.* at 429. Taken as a whole, the instructions in this case were based on traditional and acceptable language concerning reasonable doubt and malice aforethought. There is no error in the charge.

*The motion for a new trial.* On March 11, 1980, the defendant filed a motion for a new trial on the ground of newly discovered evidence. See Mass. R. Crim. P. 30, 378 Mass. 900 (1979). Little based the motion on an affidavit given to Little's defense counsel on January 4, 1980, by Leo McDonough, a friend of Little's and a member of the motorcycle club to which Little belonged. McDonough stated that he, not Little, had stabbed the victim. After holding an evidentiary hearing at which McDonough testified, see *Commonwealth* v. *Stewart*, 383 Mass. 253 (1981), the judge denied the motion in a written memorandum of opinion.

The judge found that McDonough's testimony was both internally inconsistent and "constantly at variance" with the testimony elicited at Little's trial, and that McDonough was attempting to manufacture his own defense. The judge stated that "[t]his court does not believe the testimony of Mr. McDonough" and that "[t]he contradictions in McDonough's testimony and his demeanor on the witness stand lead the court to conclude that he has fabricated his testimony in an attempt to free his friend Thomas Little." Further, the judge found that even if McDonough's testimony had been credible, it would not constitute newly discovered evidence, since McDonough testified that prior to Little's trial he had informed Little that he (McDonough) had stabbed the victim.

A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial

judge. *Commonwealth* v. *Smith,* 381 Mass. 141, 142 (1980). *Commonwealth* v. *Brown,* 378 Mass. 165, 170-171 (1979). *Commonwealth* v. *Horton,* 376 Mass. 380, 401 (1978). *Commonwealth* v. *Grace,* 370 Mass. 746, 751 (1976). *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 542 (1971). The judge's disposition of the motion will not be reversed "unless a survey of the whole case shows that [the] decision, unless reversed, will result in manifest injustice." *Sharpe, petitioner,* 322 Mass. 441, 445 (1948). Accord, *Commonwealth* v. *Brown, supra; Commonwealth* v. *Horton, supra,* and cases cited. Questions of credibility are for the trial judge, *Commonwealth* v. *Grace, supra* at 751-752, even where the testimony is undisputed, *Commonwealth* v. *DeChristoforo, supra* at 543.

In evaluating evidence offered on a motion for a new trial the judge is entitled to make use of his knowledge of what occurred at trial. *Commonwealth* v. *Grace, supra* at 752-753. *Commonwealth* v. *DeChristoforo, supra. Commonwealth* v. *Corradino,* 368 Mass. 411, 423 (1975). The judge could take into account the fact that McDonough's testimony contradicted the testimony of several trial witnesses, and he could find that McDonough, a friend of Little and a fellow member of his motorcycle club, was "likely to be untrustworthy." *Commonwealth* v. *Grace, supra* at 752, quoting from *Commonwealth* v. *Stout,* 356 Mass. 237, 243 (1969). The record amply supports the judge's conclusion that McDonough was not a credible witness.

Lastly, there also was no error in the judge's findings that the evidence was not newly discovered. The defendant knew the content of McDonough's testimony prior to the trial, and decided for tactical reasons not to disclose those facts during trial. The record "indicates a deliberate decision not to [offer this testimony] when it could have been raised seasonably before the jury. 'It is well settled that a party cannot reserve for a motion for a new trial a point that he could have raised at the trial.'" *Commonwealth* v. *Johnson,* 352 Mass. 311, 317 (1967), quoting from *Commonwealth* v. *Doyle,* 323 Mass. 633, 638 (1949). Accord,

*Commonwealth* v. *Grace, supra* at 753-754; *Commonwealth* v. *Kelley,* 370 Mass. 147, 152 (1976); *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 226-227 (1973), and cases cited. There is no error in the denial of the motion for a new trial.

*Review under G. L. c. 278, § 33E.* We have reviewed the whole case, with consideration of both the law and the evidence, and we conclude that the defendant is not entitled to relief under G. L. c. 278, § 33E.

The judgments and the order denying the motion for a new trial are affirmed.

*So ordered.*