COMMONWEALTH vs. ESTEBAN ORTIZ.

Essex. May 9, 1984. — December 17, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Evidence*, Previous testimony of unavailable witness. *Witness*, Unavailability. *Constitutional Law*, Self-incrimination, Confrontation of witnesses. *Practice, Criminal*, Transfer hearing, Probable cause hearing, New trial.

At a murder trial a juvenile witness was entitled to claim his constitutional privilege against self-incrimination, where the testimony sought could tend to incriminate him with regard to perjury in his prior testimony at the defendant's juvenile transfer hearing, as well as with regard to potential felony charges arising out of the witness's activities on the night of the murder. [529-530]

At a murder trial a juvenile witness was not precluded from exercising his constitutional privilege against self-incrimination by reason of prior testimony given by him at the defendant's juvenile transfer hearing, where the judge's warranted findings as to the witness's age and his susceptibility to fear and confusion supported his conclusion that the witness had made no voluntary and intelligent waiver of his privilege. [530]

General Laws c. 119, §§ 53 and 60, did not bar the use in evidence of a witness's testimony at the probable cause portion of a defendant's juvenile transfer hearing, where the witness, by reason of a valid claim of his privilege against self-incrimination, was rendered unavailable to testify at the defendant's trial for murder. [530-531]

Testimony by a juvenile witness recorded during the probable cause portion of a defendant's juvenile transfer hearing was properly admitted in evidence at the defendant's subsequent trial as an adult, where the witness, by reason of a valid claim of his privilege against self-incrimination, became unavailable to testify at the trial, inasmuch as the earlier proceeding dealt with the same issues as the criminal trial, the defendant had similar motivation to cross-examine the witness, and had in fact engaged in lengthy cross-examination of him. [531-535]

Where evidence at a murder trial tended to prove that the defendant and others chased the victim into a building, and that the defendant fought with the victim and stabbed him, the defendant's motion for a required finding of not guilty was properly denied. [535-536]

The judge at a murder trial did not abuse his discretion in denying the defend-
ant's motion for a new trial based on a material witness's affidavit
recanting his testimony, where the judge was warranted in concluding
that the affidavit was unbelievable and untrustworthy. [536-537]
An affidavit by an individual, not himself a witness, which related only to
collateral matters tending merely to impeach the credibility of a material
witness at a murder trial, provided no basis for allowing the defendant's
motion for a new trial. [537-538]

INDICTMENT found and returned in the Superior Court De-
partment on October 5, 1981.

The case was tried before *Robert A. Barton*, J., and a motion
for a new trial was heard by him.

The Supreme Judicial Court granted a request for direct
appellate review.

*Thomas J. Barrett* for the defendant.

*Dyanne Klein Polatin*, Assistant District Attorney, for the
Commonwealth.

LIACOS, J. Following the stabbing death of a Lawrence youth
at approximately 12:30 A.M. on December 30, 1980, a delin-
quency complaint was brought in the Lawrence District Court
against Esteban (also known as Stephen) Ortiz, who was fifteen
years old at that time. After a juvenile transfer hearing, con-
ducted pursuant to G. L. c. 119, § 61, the judge dismissed
the juvenile complaint and ordered the issuance of an adult
complaint against Ortiz for murder. Subsequently, an Essex
County grand jury returned an indictment against the defendant
for murder in the first degree. The defendant was convicted
of murder in the second degree on April 29, 1982, and was
sentenced to the mandatory term of life imprisonment at the
Massachusetts Correctional Institution at Walpole.

The defendant timely filed an appeal from his conviction,
and we granted direct appellate review. He also appealed from
the judge's denial of his motion for a new trial. We transferred
that appeal to this court on our own motion.

The defendant raises several allegations of error in the con-
duct of his trial. First, the defendant contends that the improper
admission of a Commonwealth witness's prior reported tes-
timony from the probable cause portion of the defendant's
juvenile transfer hearing prejudiced the defendant's right to a

fair trial. He next contends that the Commonwealth's "treatment and subsequent prosecution methods influenced" the testimony of several witnesses and deprived him of a fair trial, and that there was insufficient evidence to support the verdict. He also argues that the trial judge abused his discretion in denying the defendant's motion for a new trial. After examining each of the defendant's contentions, we conclude that there was no error. We affirm the conviction and the denial of the motion for a new trial.

At trial, the Commonwealth called as a witness Jose Lara, who was fifteen years old at the time of the homicide. Lara was a friend of Ortiz. Lara lived in a low-income housing project in Lawrence and stated that he knew Miguel Figueroa and Jamie Quinones, who allegedly were present at the scene of the homicide. Lara testified that on the evening of December 29, 1980, he and Figueroa were at the home of a neighbor, Carmen Colon. When asked if Ortiz arrived at the house, Lara responded: "No — I'm going to say it straight, because they going [*sic*] to catch me in lie; I'm going to speak out the truth."

On further questioning, Lara admitted that he previously had told police officers, and had testified at the defendant's juvenile hearing, that Ortiz had arrived at the neighbor's house at 9:45 P.M. that evening. At this point, the judge called a recess and asked the witness whether he understood the crime of perjury. Lara said that he did not. The judge explained the substance of the crime to him and appointed counsel for him.

After consulting with his attorney, Lara invoked the Fifth Amendment privilege against self-incrimination. The prosecutor requested that the judge declare Lara to be an unavailable witness. Following an extensive voir dire, the judge found that Lara did not waive his Fifth Amendment privilege by his brief testimony in the present proceedings, and that his testimony at the defendant's juvenile hearing did not constitute voluntary and intelligent waiver.[1] The judge further found that,

---

[1] At trial, Lara told the judge that when he had first taken the stand at the juvenile hearing he had invoked his privilege against self-incrimination on the advice of his attorney. When he resumed the witness stand at that

in any event, under Massachusetts law, any waiver of the privilege would not continue at a later and separate proceeding. The judge also determined that Lara's present testimony could tend to incriminate him concerning the offense at issue in the trial, and other offenses, including perjury.[2] He thus concluded that Lara was an unavailable witness.

Over the objection of defense counsel, the judge granted the Commonwealth's request to admit Lara's testimony at the defendant's juvenile hearing as prior reported testimony. See *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980); *Commonwealth* v. *Gallo*, 275 Mass. 320, 328-334 (1931). Cf. *Commonwealth* v. *Bohannon*, 385 Mass. 733, 740-749 (1982). The judge reasoned that Lara's previous testimony concerned substantially the same issues "for which it would be introduced at this trial," and that the defense counsel at the hearing had "reasonable opportunity" and "similar motivation" to cross-examine Lara.

The substance of Lara's prior reported testimony read to the jury was as follows. On the evening of December 29, 1980, Lara, Ortiz, Figueroa, and Quinones attempted to break into Romeo's Pizza, located near the Merrimack housing project in Lawrence. During this attempted break-in, Robert Larochelle walked by. The four boys chased Larochelle into the hallway

---

hearing, he decided to testify. When asked by the trial judge what changed his mind, Lara said that he was "scared . . . [t]hat [he] might get locked up for life." The police had told him, shortly after the homicide, that if he told the judge "that [he] was home all that night . . ., the Judge, he'll lock you up for life." Lara further told the trial judge that he had decided to testify because he "thought . . . that [he would] get out, like, quick; [he] wasn't expecting it to last this long."

Lara also said that he told the other boys after his first time on the stand, "'Boy, you're going to have to say something, because they're hard' . . . like, it's tough; and I said, 'Man, if we keep on saying it, they're going to lock us up.'" Lara said that the three boys agreed to "say he [Ortiz] done it, and they'll let us go and they'll hold him."

[2] Based on Lara's prior testimony that he was at the scene of the crime and that, prior to the stabbing, he and the other boys attempted to break into Romeo's Pizza, the judge concluded that the witness's trial testimony could incriminate him "relative to the offense of breaking and entering in the nighttime a building with intent to commit a felony, or murder."

of one of the buildings of the housing project. There, he was stabbed. Then all the boys ran from the scene.

Lara first claimed that he was keeping watch outside the building and was not in the hallway when the victim was stabbed. He said that he only knew that the victim was stabbed when he heard him scream for help. Lara also initially denied seeing Ortiz attack the victim. The assistant district attorney at the juvenile hearing then confronted Lara with contradictory statements he had made to police officers.[3] Lara admitted making many of these statements, and finally reaffirmed the crucial substance of them: he did chase the victim into the hallway with the defendant, he participated in a fight which ensued, and then observed Ortiz stab the victim with a knife.[4]

---

[3] The trial judge instructed the jury that Lara's prior inconsistent statements in the recorded testimony were to be considered only on the issue of his credibility as a witness.

[4] We reproduce a portion of the relevant colloquy at the juvenile hearing in which Lara reaffirmed his earlier statements.

THE PROSECUTOR: "Now, when you got into the hallway, did a scuffle take place in the hallway?"
THE WITNESS: "What?"
THE PROSECUTOR: "Did a fight take place in the hallway?"
THE WITNESS: "A fight, yes."

.   .   .

THE PROSECUTOR: "Well, you were standing there watching the fight; is that correct?"
THE WITNESS: "Yes."
THE PROSECUTOR: "And Stephen Ortiz was over him; is that right?"
THE WITNESS: "Yes."
THE PROSECUTOR: "Stephen Ortiz had a knife; is that right?"
THE WITNESS: "Yes."

.   .   .

THE PROSECUTOR: "At some time you saw Stephen take the knife out, didn't you?"
THE WITNESS: "Yes."
THE PROSECUTOR: "Immediately after that, he stabbed the boy, isn't that right?"
THE WITNESS: "Yes."
THE PROSECUTOR: "Then after he stabbed the boy, he ran out; is that right?"
THE WITNESS: "Yes."
THE PROSECUTOR: "You all ran out?"
THE WITNESS: "Yes."

On cross-examination by the defense counsel at the juvenile hearing, Lara did not refute these statements. He did admit, however, that Quinones was not inside the hallway as he had previously stated, but had remained outside the building during the incident.

Other testimony given at the instant trial was as follows. Quinones stated that he was present at the attempted burglary of Romeo's Pizza on December 29, together with Lara, Figueroa, and Ortiz. Quinones said that the victim walked by them, the boys exchanged hostile words, and then the other boys chased him into one of the buildings of the housing project. Quinones did not follow, but ran around to the side of the building. As he was running away, he heard screams from inside the building.

Figueroa was granted immunity at the request of the Commonwealth, but ultimately testified for the defense. He claimed that he was with Ortiz on December 29 until 5:30 P.M. when the defendant left and headed in the direction of his home. Figueroa said that he did not see the defendant again that evening or early the following morning. The witness then went to Carmen Colon's home, where he was joined during the evening by Quinones and Lara.[5] Figueroa stated that he left Colon's house at 11:30 P.M. and went home. Figueroa claimed that he had previously lied to the police officers and before the grand jury in implicating the defendant in the crime because he was scared and confused, and had been told by the police officers that Lara and Quinones had said that he, Figueroa, had stabbed the victim.[6]

---

[5] This testimony was corroborated by the prior reported testimony of Carmen Colon and her son, George Nieves, given at the juvenile hearing and read to the jury by defense counsel. Both witnesses stated that Ortiz had not been at their home on December 29, although Lara, Quinones, and Figueroa had been there until 11 P.M.

[6] Figueroa also testified that one of the detectives looked as if he were going to hit him, and that he was prompted, as to the particulars of his false story, by the police officers' telling him what Lara and Quinones had said about the incident. The judge again properly instructed the jury that Figueroa's prior inconsistent statements were to be considered only on the issue of the witness's credibility.

The defendant took the witness stand and testified that on December 29 he had left the company of Lara and other youths at 7:30 P.M., that he had spent the evening at home, and had gone to bed about 9:30 P.M. The defendant's parents corroborated his testimony by testifying that Ortiz was home when they went to bed and that he was sleeping in bed when his mother checked his room at 12:30 A.M.[7]

The defendant claims that the trial judge erred by admitting the transcript of Lara's testimony at the defendant's juvenile hearing as prior reported testimony. See *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980); proposed Mass. R. Evid. 804 (b) (1); Fed. R. Evid. 804(b)(1). Ortiz argues that the judge erroneously ruled that Lara could invoke his privilege against self-incrimination at trial and could become an "unavailable" witness, thereby satisfying the first prerequisite of the prior reported testimony rule. The defendant contends, furthermore, that a similar motive to cross-examine witnesses does not exist at a juvenile hearing and at trial, and thus portions of the former proceeding should not have been admissible as prior reported testimony.

1. We have held that a witness at trial who invokes properly the Fifth Amendment privilege against self-incrimination is unavailable for purposes of the prior reported testimony exception to the hearsay rule. *Commonwealth* v. *Canon*, 373 Mass. 494, 499-500 (1977), cert. denied, 435 U.S. 933 (1978). *Id.* at

---

[7] Mr. Paul Nathan, the defendant's counsel at the juvenile hearing, testified that when he had spoken with Lara concerning the events of December 29 and 30, Lara had denied his own involvement and had not mentioned Ortiz's participation in the stabbing. Lara had told Mr. Nathan that he only saw Ortiz earlier in the evening of December 29, and that he (Lara) had spent the night at home. Later, Lara repeated this account to Mr. Nathan at his office and agreed to have his account tape recorded. Lara told him that he felt that he had to testify falsely because the police officers believed that he was involved and had told him to come forward and to reveal who he thought had committed the stabbing to avoid implicating himself further.

Kelly A. Abate, an acquaintance of Lara, testified that Lara had told her, a few weeks after Ortiz was arrested, that he had lied to the police officers about Ortiz because Quinones had threatened to "beat him up" if he didn't say "that Stephen had done it." Lara also told her that, although he denied involvement, the police officers "kept on bugging him and bugging him until he just agreed with them, by letting them hear what they wanted to."

510-511 (Liacos, J., dissenting). See *Commonwealth* v. *Di-Pietro,* 373 Mass. 369, 380 (1977). In the present case, the judge correctly ruled that Lara could claim the privilege, since his trial testimony could tend to incriminate him regarding the offense of perjury or of breaking and entering a building in the nighttime with the intent to commit a felony. When Lara testified at the juvenile hearing, he gave two conflicting accounts of the defendant's involvement in the murder. Any further testimony by the witness might demonstrate more clearly and specifically that the witness committed perjury at the prior hearing. Furthermore, Lara's testimony could incriminate him on various felony charges ranging from burglary to murder.

The judge also properly concluded that Lara did not waive his Fifth Amendment privilege at the defendant's trial by testifying at the juvenile hearing. He found that there was no voluntary and intelligent waiver, and supported his ruling by citing Lara's age (fifteen years) and his own observations that Lara was not intelligent and, in fact, was easily confused. The judge's findings are entitled to substantial deference by this court. *Commonwealth* v. *Bookman,* 386 Mass. 657, 661 n.6 (1982). In addition, "[s]pecial caution is indicated where a juvenile witness is involved . . . to ensure that his rights do not become forfeit through fear, confusion or intimidation." *Taylor* v. *Commonwealth,* 369 Mass. 183, 192 (1975). Our reading of the transcript shows evidence of Lara's fear and confusion; Lara also testified against the advice of his appointed counsel. We agree with the trial judge that Lara's testimony was not freely and voluntarily given. Thus, Lara's proper invocation of his Fifth Amendment privilege at trial rendered him unavailable as a witness for the purpose of applying the prior reported testimony rule. See *Commonwealth* v. *Canon, supra.*[8]

2. The defendant also asserts that, by virtue of G. L. c. 119, §§ 52-63, the use of evidence from a juvenile hearing in a later

---

[8] The trial judge set forth an alternate holding "that there is no continuing waiver theory in Massachusetts." We need not discuss this issue. In support of the judge's ruling are *Palaza* v. *Superior Court, post* 1001 (1984), and *Commonwealth* v. *Borans,* 388 Mass. 453, 457 (1983).

criminal proceeding is prohibited. We conclude that the statute does not bar use of the transcript. General Laws c. 119, § 60, prohibits the use of records of certain juvenile proceedings as evidence in certain cases. But the language of § 60 applies only to proceedings relating to adjudications of delinquency pursuant to G. L. c. 119, §§ 52-59, and not to a probable cause determination authorized under § 61.[9] Furthermore, we cannot say fairly that G. L. c. 119, § 53, which requires that the statute pertaining to juvenile proceedings be construed liberally and that juveniles be treated as children in need of aid, prohibits the use of prior recorded testimony from the probable cause portion of a juvenile transfer hearing in a later criminal trial. The policies embodied in § 53 cannot extend the clear expression of legislative intent set forth in § 60.

3. We now consider whether the Commonwealth demonstrated Lara's prior reported testimony bore sufficient "indicia of reliability" to furnish the jury with an adequate basis to evaluate the truth of the former statements. *Commonwealth* v. *Canon, supra* at 501, quoting *Mancusi* v. *Stubbs*, 408 U.S. 204, 213 (1972). Where the unavailability of a witness has been established at trial, prior reported testimony of that witness may be admissible although such testimony "has some superficial resemblance to hearsay." *Commonwealth* v. *Gallo*, 275 Mass. 320, 329 (1931). See *Commonwealth* v. *Meech, supra.* Although prior reported testimony may qualify as an exception to the hearsay rule, *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741 (1982), in order to safeguard a defendant's constitutional right of confrontation,[10] judges should only admit prior

---

[9] "An adjudication of any child as a delinquent child under sections fifty-two to fifty-nine, inclusive, or the disposition thereunder of any child so adjudicated, or any evidence given in any case arising under said sections, shall not be lawful or proper evidence against such child for any purpose in any proceeding in any court . . . ." G. L. c. 119, § 60, as amended by St. 1973, c. 1073, § 16.

[10] The Sixth Amendment to the Constitution of the United States, which provides, in relevant part, that a defendant has the right "to be confronted with the witnesses against him," is applicable to State proceedings through the Fourteenth Amendment. See *Pointer* v. *Texas*, 380 U.S. 400, 406 (1965). A similar provision is found in art. 12 of the Declaration of Rights of

testimony which bears sufficient "indicia of reliability" and which furnishes the trier of fact with an adequate basis for determining the veracity of the prior statements. See *Commonwealth* v. *Canon*, 373 Mass. 494, 511 (1977) (Liacos, J., dissenting); *Dutton* v. *Evans*, 400 U.S. 74, 89 (1970) (plurality opinion). Accord *Commonwealth* v. *Bohannon, supra* at 746.[11]

The prior testimony of the currently unavailable witness must have been given "in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered." *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980). To determine whether the defendant's motive to cross-examine witnesses at the prior hearing is similar to his motive to cross-examine at trial, "[t]he issue on which the testimony was introduced in the [earlier] proceeding as well as the purpose for which the testimony was offered must be substantially similar to the issue and purpose for which the same testimony is offered at the subsequent criminal trial." *Commonwealth* v. *Canon, supra* at 512 (Liacos, J., dissenting). See *Commonwealth* v. *Meech, supra* at 495. "[T]he considerations which guide the conduct of the cross-examination . . . during the prior [proceeding] must be functionally equivalent to the considerations which prevail at the later trial where the former testimony is introduced." *Commonwealth* v. *Canon, supra,* (Liacos, J., dissenting).

In *Breed* v. *Jones*, 421 U.S. 519 (1975), the Supreme Court of the United States concluded that a defendant's Fifth Amendment right not to be tried twice for the same offense was violated when he was prosecuted as an adult for an offense following an adjudicatory proceeding in a Juvenile Court wherein he was found guilty of the offense and unfit for treatment as a juvenile. As a result, the Court required that judges

the Massachusetts Constitution, which provides, in part, that every defendant shall have the right "to meet the witnesses against him face to face."

[11] As we noted in *Bohannon*, the confrontation right affords broader protection to criminal defendants than does the hearsay rule. See *Commonwealth* v. *Bohannon, supra* at 741, and cases cited.

make the decision to transfer juveniles to the jurisdiction of the adult courts prior to conducting adjudicatory hearings which could then subject them to the expense, psychological strain, and embarrassment of two criminal proceedings. *Id.* at 538-539. In response to the *Breed* case, our Legislature amended G. L. c. 119, § 61, the statute which prescribes the procedure for dismissing a juvenile complaint and for ordering the issuance of an adult complaint against a child fourteen to seventeen years of age who commits a serious criminal offense involving the infliction or threat of serious bodily harm or which would be punishable by imprisonment in the State prison if committed by an adult.

The amended statute provides that a judge, prior to transferring the child to the adult court, must find that "probable cause exists to believe that the child has committed the offense," and "based upon clear and convincing evidence . . . the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, if any, and is not amenable to rehabilitation as a juvenile." G. L. c. 119, § 61, as amended by St. 1977, c. 829, § 11. *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 559 (1980). *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 277 (1976) (*A Juvenile I*). See Dist. Mun. Cts. R. Civ. P. 208 (1976).

In *A Juvenile* v. *Commonwealth*, 375 Mass. 104 (1978) (*A Juvenile II*), we held that the dismissal of delinquency complaints for lack of probable cause does not bar the institution of a second transfer hearing based on subsequent delinquency complaints supported by newly obtained evidence. This holding mirrors the rule followed in adult proceedings. See *Burke* v. *Commonwealth*, 373 Mass. 157 (1977); *Maldonado, petitioner*, 364 Mass. 359, 363-365 (1973). Our decision in *A Juvenile II, supra*, rested on the thought that "the function of [adult] probable cause hearings is identical to that of the probable cause portion of transfer hearings." *Id.* at 107. In both the juvenile and adult proceedings the case is dismissed if no probable cause is found. The language in *A Juvenile II* is clear: adult and juvenile probable cause hearings serve identical purposes.

Consequently, cases such as *Commonwealth* v. *Mustone,* 353 Mass. 490 (1968), control on the question of the admissibility at trial of prior recorded testimony given at the probable cause portion of the juvenile transfer hearing. This court has upheld the admission in a criminal case of prior reported testimony presented in an adult probable cause hearing concerning the same charges against a defendant. See *id.* at 492-493; *Commonwealth* v. *Caruso,* 251 Mass. 362, 366-367 (1925); G. L. c. 276, § 38. In *Mustone* we reasoned that the probable cause hearing in a District Court does not present issues which are substantially different from those that arise at trial. In order to bind defendants over for trial in the Superior Court, a judge must find that they "appear to be guilty of [the] crimes" for which they later will be tried. *Commonwealth* v. *Mustone, supra* at 493, quoting G. L. c. 218, § 30, as appearing in St. 1941, c. 194, § 19.[12] Similarly, a judge of a District Court can only hold a defendant for trial if, after the hearing, "it appears that a crime has been committed and that there is probable cause to believe the [defendant] guilty." G. L. c. 276, § 42. See *Myers* v. *Commonwealth,* 363 Mass. 843 (1973). Since the purpose of the probable cause hearing is to "screen out at this . . . critical stage of the criminal process those cases that should not go to trial," *id.* at 847, we have held that defendants at such hearings must have the opportunity to cross-examine adverse witnesses and to present testimony in their own behalf to the extent available at a trial. *Id.* at 855-856.[13] Accord *Corey* v. *Commonwealth,* 364 Mass. 137, 140-141

---

[12] The relevant portion of G. L. c. 218, § 30, provides: "[District Court judges] shall commit or bind over for trial in the superior court persons brought before them who appear to be guilty of crimes not within their final jurisdiction, and may so commit or bind over persons brought before them who appear to be guilty of crimes within their final jurisdiction."

[13] Reflecting on the serious consequences of the probable cause hearing, which enables a judge to order a defendant to be held for trial, we have adopted a "'directed verdict' rule" for defining the quantum of evidence which must support a bind-over determination. *Myers* v. *Commonwealth, supra* at 850. Thus, the judge or magistrate should view the proceeding as if it were a trial, and should find probable cause only if the Commonwealth has presented sufficient evidence to send the case to a jury. See *id.*

(1973). See *Commonwealth* v. *Britt,* 362 Mass. 325, 330-331 (1972); G. L. c. 276, §§ 38, 41-42. A defendant at an adult probable cause hearing has similar opportunity and motive to cross-examine witnesses as he does at trial; it is these factors which appear to give the testimony reported at the former proceeding sufficient reliability to comport with the requirements of the confrontation right. See *Commonwealth* v. *Meech,* 380 Mass. 490, 494 (1980); *Commonwealth* v. *Canon,* 373 Mass. 494, 511-512 (1977) (Liacos, J., dissenting); *Commonwealth* v. *Mustone, supra* at 492.

The purposes of the probable cause portion of a juvenile transfer hearing are the same as those of a probable cause hearing involving an adult. See *A Juvenile II, supra.* Thus, the issues on which testimony is offered at the juvenile probable cause hearing and the issues at the subsequent trial are substantially similar. At both proceedings, the prosecution seeks to establish a prima facie case that the defendant committed the offense charged. Cf. *Commonwealth* v. *Mustone, supra* at 493.

Furthermore, the defendant's counsel received adequate notice that a juvenile probable cause hearing would be held. G. L. c. 119, § 61. Dist. Mun. Cts. R. Civ. P. 208 (1976). In the present case, the defendant was the subject of such a probable cause hearing, and the defendant's counsel engaged in a lengthy cross-examination of Lara. The questioning dealt, in part, with the differing versions of the events on the night of the homicide, which Lara had reported to the police officers, and as to which he testified on direct examination. Thus, we conclude that the judge did not err in ruling that the transcript of Lara's testimony at the probable cause portion of the juvenile transfer hearing was admissible.

4. We turn now to the defendant's claim that he should have been granted a required finding of not guilty because there was insufficient evidence to support the verdict. Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979).[14] In reviewing this

[14] We consider the defendant's argument that he was denied a fair trial because prosecution was based on noncredible witnesses to be spurious. "Credibility is a question for the jury to decide. Once sufficient evidence is presented to warrant submission of the charges to the jury, it is for the jury

issue, we consider all the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Wilborne,* 382 Mass. 241, 244 (1981). *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 & n.1 (1976). Applying these standards, we find that the motion for a required finding of not guilty was properly denied. The evidence showed that the defendant and others chased the victim into a building and that the defendant fought with the victim, stood over him, took out a knife, stabbed the victim, and threw the knife away as he fled.[15] The evidence supports the jury's conclusion that Ortiz was the person responsible for Robert Larochelle's death. There was no error in denying the defendant's motion for a required finding of not guilty.

5. Next, we address the argument that the judge's denial of the defendant's motion for a new trial was an abuse of discretion. The defendant first contends that new evidence in the form of an affidavit by Lara is material and would probably result in an acquittal on retrial. Lara's affidavit alleges that he lied at the juvenile probable cause hearing and now wishes to tell the truth. He also offers impeachment evidence as to Quinones's testimony at trial.

"When a defendant seeks a new trial based on an alleged recantation by a material witness, ' "the duty of the trial judge is to give grave consideration to the credibility of the witness's new testimony" and . . . "the motion is addressed to [the trial judge's] sound judicial discretion." ' " *Commonwealth* v. *Tobin,* 392 Mass. 604, 618 (1984), quoting *Commonwealth* v. *Cassesso,* 360 Mass. 570, 575 (1971), vacated and remanded on other grounds sub nom. *Limone* v. *Massachusetts,* 408 U.S. 936 (1972). The trial judge is entitled to take into account his knowledge of what occurred at trial and to assess questions of

alone to determine what weight will be accorded to the evidence." *Commonwealth* v. *Hill,* 387 Mass. 619, 623-624 (1982), quoting *Commonwealth* v. *Hoffer,* 375 Mass. 369, 377 (1978).

[15] The defendant argues that Lara's prior recorded testimony is "too tenuous and unreliable to support a denial of the requested directed verdict." In light of our conclusion that Lara's testimony was admitted properly, the evaluation of the credibility of a witness whose testimony is read to the jury by another is the province of the jury. *Commonwealth* v. *McCauley,* 355 Mass. 554, 560 (1969).

credibility. *Commonwealth* v. *Little,* 384 Mass. 262, 269 (1981). "The judge's disposition of the motion will not be reversed 'unless a survey of the whole case shows that [the] decision, unless reversed, will result in manifest injustice.'" *Id.,* quoting *Sharpe, petitioner,* 322 Mass. 441, 445 (1948).

The judge found that the testimony in Lara's affidavit was not credible, was untrustworthy, was contradicted by other testimony, and was not likely to affect the outcome in a new trial considering the other evidence. He also noted that, if Lara were to testify at a new trial, his credibility would be damaged in such a way by earlier testimony that his new testimony would be relatively worthless.

We conclude there was no abuse of discretion in the trial judge's denial of the defendant's motion for a new trial based on Lara's affidavit. The testimony of Quinones and Lara's own previous statements to the grand jury and to the police officers contradict Lara's most recent statements. Moreover, since Lara filed his affidavit just four days before a complaint against him issued from the Juvenile Court, his motivation for coming forward is questionable. The judge was warranted in concluding that Lara's affidavit is unbelievable and untrustworthy.

The defendant also bases his motion for a new trial on the affidavit of Jose Manuel Santiago, a person who did not testify at trial. Santiago states that on December 29 he did not see the defendant after 5:30 P.M. He states that while being held at the police station he heard detectives yelling at Lara and suggesting to Lara certain facts about the break-in at Romeo's Pizza and the stabbing. To grant a new trial on the ground of newly discovered evidence, a judge must find that the evidence is material. The evidence must "be so grave, material and relevant as to afford a probability that it would be a real factor with the jury in reaching a decision." *Davis* v. *Boston Elevated Ry.,* 235 Mass. 482, 496 (1920). Santiago cannot testify as to the defendant's whereabouts at the time of the stabbing; his allegation of police officers' statements to Lara only serves to impeach the testimony of Lara, who had already been impeached sufficiently by Lara's own statements. Newly discov-

ered evidence that tends merely to impeach the credibility of a witness will not ordinarily warrant a new trial. *Commonwealth* v. *Cassesso, supra* at 576. We agree with the trial judge that Santiago's affidavit relates only to collateral matters and not to fundamental issues. The defendant also has failed in his burden to prove that Santiago was unavailable at the time of trial, or that his evidence could not have been procured by due diligence. See *Commonwealth* v. *Toney,* 385 Mass. 575, 581 (1982).

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*